**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Plaintiff,**

v.

**Gus OHLSON; Gardis Ohlson; Gus Ohlson and Harriett Ohlson Haight, Executors of the Estate of Clifford Ohlson; the Commodity Credit Corporation; Randy Peterson; and Margaret Ann Ohlson; Defendants.**

No. C84–4174.

United States District Court, N.D. Iowa, W.D.

April 8, 1987.

Hess R. Roorda, Sioux City, Iowa, for plaintiff.

A.F. Waldstein, Storm Lake, Iowa, John A. Wibe, Cherokee, Iowa, Roger Bindner, Paullina, Iowa, Thomas McCullough, Sac City, Iowa, Asst. U.S. Atty., Sioux City, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW

DONALD E. O'BRIEN, Chief Judge.

This matter is before the Court on written submissions of plaintiff and Defendant Harriett Ohlson Haight, Executor of the Estate of Clifford Ohlson, deceased. No other party has made any submission to the Court. The Court has heard evidence from the interested parties; this matter was submitted upon written briefs, depositions of witnesses and exhibits, as well as final oral arguments. The Court desired to have a full record before reaching the disputed legal issues. For the reasons set out below, the Court shall grant a personal judgment for the FDIC against Gus and Gardis Ohlson and the Estate of Clifford Ohlson, and judgment in rem against all the defendants' interests in the real property hereinafter described.

In this case, plaintiff seeks two forms of relief: first, plaintiff is seeking the foreclosure of the mortgage it holds and the establishment of the lien of that mortgage as a first and prior lien against the following real property in Cherokee County, Iowa, to wit:

North One-half of the Northeast Quarter (N½ NE¼) of Section Fourteen (14),

Township Ninety-one (91) North, Range Thirty-nine (39) West of the 5th P.M.

Second, plaintiff seeks a personal judgment against Gus Ohlson, Gardis Ohlson and the Estate of Clifford Ohlson in the amount of $150,785.62 with interest, fees and costs. The basis for this judgment is the promissory note which is plaintiff's Exhibit 1.

All defendants except the Estate of Clifford Ohlson are in default. As to those defendants, it is undisputed that plaintiff is entitled to all of the relief it seeks. The right to foreclose is conceded.

As a result, there remains the issue of whether plaintiff is entitled to a personal judgment against the Estate of Clifford Ohlson. In deciding this issue, the Court must determine whether it can consider the alleged mental incapacity as a defense of Clifford Ohlson in enforcement of the promissory note. The Court is constrained to conclude under the law that it may not consider his alleged incapacity as a defense.

The FDIC relies on 12 U.S.C. § 1823(e) and the federal common law, which together give the FDIC rights superior to a mere "holder." Section 1823(e) provides:

> Agreements against interests of corporation.

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

By its terms, § 1823(e) applies to "agreements", and not to the question here of whether an obligor had sufficient mental capacity to enter into a contract on a note. Nevertheless, in *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), the court held "that as a matter of federal common law, the FDIC has a complete defense to state and common law fraud claims on a note acquired by the FDIC in the execution of a purchase and assumption transaction, for value, in good faith, and without actual knowledge of the fraud at the time the FDIC entered into the purchase and assumption agreement." *Id.* at 873.[1] The defense in *Gunter* of fraud in the inducement, and the defense here of incapacity to contract, are both issues regarding proper formation of a contract, and the instant case cannot be distinguished materially from *Gunter* on the basis that the defenses are different.

Further, the FDIC entered into a purchase-and-assumption agreement here, just as it did in *Gunter*, and all the policy reasons for giving the FDIC rights superior to a mere holder that applied in *Gunter* apply here. For example, the FDIC has a duty under § 1823(c) to assess its potential liability when considering a purchase-and-assumption agreement vis-a-vis a liquidation, and the FDIC must be able to rely on the books and records of the failing bank in so doing. *Gunter*, 674 F.2d at 873. *Fed. Dep. Ins. Corp. v. La Rambla Shopping Center*, 791 F.2d 215, 218 (1st Cir. 1986). If the FDIC and the purchasing bank are unable to rely on the books and records, they will have less incentive to enter into a purchase-and-assumption agreement; the prospect of more liquidations are enhanced. In a liquidation, in contrast with a purchase-and-assumption agreement, the failed bank is not reopened, outstanding checks are returned unpaid, underinsured depositors are not fully paid, and smaller depositors may wait months to receive payment of insured funds which they may need to meet every-day living expenses. *Id.* at 865.

---

1. For application of a similar rule, *see Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 161 (6th Cir.1985); *Fed. Deposit Ins. Corp. v. Gulf Life Ins. Co.*, 737 F.2d 1513 (11th Cir.1984).

Applying the rule in *Gunter* to the facts of this case, the FDIC is entitled to recover if it purchased the note and mortgage (1) for value, (2) in good faith, and (3) without actual knowledge of the alleged mental incapacity of Clifford Ohlson. It is clear that the first two requirements are met and that the FDIC/Corporate purchased the assets from the FDIC/Receiver. The purchase was for value, and in good faith. There is no evidence to the contrary. Under the law, the FDIC is entitled to act in a dual capacity. *Gunter, supra,* 674 F.2d at 874. The third factor is met since there is no evidence before the Court that the FDIC/Corporate was aware of Clifford Ohlson's alleged mental incapacity when the FDIC purchased the assets from the Receiver.

The Court believes the rule derived from *Gunter* and applied here does not upset the normal commercial expectations of the parties regarding defenses against a transferee to a promissory note. The reason the FDIC cannot be considered a holder in due course as defined in Iowa Code § 554.3302 is that the note and mortgage were purchased as part of a bulk transaction not in the ordinary course of business. Iowa Code § 554.3302(3)(c). Had the bank not failed, but instead transferred the note in the ordinary course of business to another institution for value, in good faith, and without notice of it being overdue,[2] or of the defense of mental incapacity, the transferee would have taken it as a holder in due course, free from the defense of mental incapacity.[3] Transfer of the note is ordinarily a more likely prospect than bank failure. While the FDIC is not a holder in due course, its rights under federal common law are superior to a holder, and somewhat akin to a holder in due course.

For purposes of making a full record, the Court shall briefly set out the facts regarding Clifford's mental capacity. The facts are disputed. Clifford's son Gus and Gus's wife Gardis contend that Clifford understood the note and mortgage Clifford signed together with Gus. Gus testified that his father knew that any time a farmer signed a note with a bank it obligated him for "everything he had." Gus testified that his father was generally alert, had occasional lapses, but did not have a lapse on the day the note was signed. Gus claims he knew his father's condition best since Clifford had lived with Gus and Gardis for one and one-half years after the note was signed.

Clifford's daughter Harriet Ohlson Haight did not see her father more than once a month. She claimed that Clifford would sign anything Gus told him to sign, that Gus had been hospitalized for mental problems one month before signing, and that Clifford was not aware of Gus's financial problems before signing. Harriet also contends that Clifford accepted cash rent from Gus in substantially lower amounts than fair market value and that he clearly had no concept of his own financial affairs. The federal common law will not allow the Court to consider Clifford's mental capacity as a defense. If the law allowed the Court to consider Clifford's mental capacity, the Court would have found that Clifford did not understand the note and mortgage and that the equities are with the Estate.

The Estate of Clifford Ohlson raises certain defenses regarding Clifford Ohlson's status as an accommodation maker. The defense asserted is based on the defendant's mental incapacity to understand a provision for unilateral extension of the loan. As previously mentioned, mental incapacity is not a defense against the FDIC in this case, and the Court finds that the bank's unilateral extension of the due date was consistent with the note's provision that permitted it. The extension of the due date did not prejudice Clifford Ohlson by the mere fact it was granted. The alterna-

---

**2.** Defendant has contended that the note was overdue here, but based on the automatic renewal clause, the Court is not so persuaded.

**3.** Mental incapacity makes an agreement voidable, not void ab initio, *Allen v. Berryhill,* 27 Iowa 534 (1869); *Sjulin v. Clifton Furniture Co.,* 241 Iowa 761, 41 N.W.2d 721, 725 (1950); *Restatement (Second) of Contracts* § 15. Under U.C.C. comment 5 to § 554.3305, a defense that makes an obligation merely voidable does not prevail over a holder in due course.

tive to extension was a foreclosure suit by the bank upon default under the earlier due date. Obviously, if foreclosure had been initiated earlier and been fully litigated before the FDIC/corporate acquired the note and mortgage, the defense of mental incapacity would have been available against the bank. What prejudiced the estate was not the fact an extension was made, but the fact the bank went broke and the FDIC/corporate acquired the note in a status akin to a holder in due course.

IT IS THEREFORE ORDERED that plaintiff is granted personal judgment against Gus Ohlson, Gardis Ohlson and the Estate of Clifford Ohlson, and judgment in rem against all defendants' interests in the real property hereinabove described in the amount of $150,785.62, together with interest thereon at the rate of 14% per annum from June 24, 1985 to the entry of the judgment, and thereafter at the rate provided by law, plus costs, including abstracting fees in the amount of $305.25, and a reasonable attorney's fee as provided by law. The plaintiff shall submit an itemized statement of attorney fees and a calculation of the daily accrual of interest and a proposed judgment and decree of foreclosure within fourteen days of the filing of this order. The proposed judgment shall be circulated to counsel of record, and the Court shall consider entering it if there are no objections to form, within seven days after the Court's receipt thereof.