### FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,

v.

### Pauline M. PERCIVAL, Defendant.

### No. CV. 88-0-257.

United States District Court,
D. Nebraska.

Aug. 31, 1990.

See also, 131 F.R.D. 166.

Paul A. Zoss, Des Moines, Iowa, for plaintiff.

Knapp, Mues, Beavers & Luther, Wesley C. Mues, Daniel L. Aschwege, Kearney, Neb., for defendant.

## MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on the report and recommendation of the magistrate (Filing No. 36), and memorandum supplementing the report and recommendation (Filing No. 39). The magistrate filed the report and recommendation relating to cross-motions for summary judgment (Filing Nos. 25 and 28). Pursuant to 28 U.S.C. § 636, the Court has made a *de novo* determination of those portions of the recommendation to which objection has been made. For the reasons set forth, the Court will adopt the recommendation of the magistrate and grant defendant's motion for summary judgment.

## FACTS

The FDIC filed its complaint seeking to collect on a guarantee agreement which was executed and signed by the defendant. The guarantee was given to the Security State Bank of Oxford, Nebraska, on June 6, 1979, and guarantees payment to the extent of $35,000 on notes executed by the "Percival Brothers (Mark Percival and Gary Percival)" (Filing No. 1, Exhibit A). On September 11, 1987, an agreement was entered into between the principal debtors and the Security State Bank whereby collateral securing the indebtedness was surrendered to the Bank in return for a release of the obligations owed to the Bank (Filing No. 4, Exhibit D). The collateral was surrendered and sold at public auction by the Bank on September 29, 1987. Plaintiff admits that the Security State Bank did not provide defendant with written notice of this sale of the collateral securing the debts of the Percival Brothers. On October 1, 1987, the Security State bank was declared insolvent and the FDIC appointed receiver.

Defendant asserts that her liability on the guarantee was extinguished on September 11, 1987, by virtue of an accord and satisfaction with Security State Bank. Defendant further alleges that the right to seek a deficiency judgment was extinguished prior to the time the FDIC entered into the purchase and assumption agreement because the Security State Bank failed to provide the defendant with notice of sale of the collateral as required by Neb. U.C.C. § 9–504(3). In support of its proposition that the defenses raised by the defendant are invalid, the plaintiff relies on 12 U.S.C. § 1823(e) and on its alleged status as a holder in due course.

## DISCUSSION

Generally, when the FDIC serves as receiver of a failed bank, it may pay off the bank's depositors by two methods. The first is simply to liquidate the bank's assets and pay the depositors their insured amounts, covering any shortfall with insurance funds. The FDIC tries to avoid this option, however, because it decreases public confidence in the banking system and may deprive depositors of the uninsured portions of their funds. *Grubb v. FDIC*, 868 F.2d 1151, 1155 (10th Cir.1989), citing *FDIC v. Merchants National Bank*, 725 F.2d 634, 637 (11th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). *See also, Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The second, and preferred alternative, is to initiate a purchase and assumption transaction. In this type of transaction, the FDIC as receiver arranges to sell acceptable assets of the failed bank to an insured, financially sound bank, which assumes all of the corresponding deposit liabilities and reopens the failed bank without an interruption in operations or loss to depositors. The FDIC as receiver then sells to the FDIC in its corporate capacity the assets that the assuming bank declined to accept. The corporate entity of the FDIC in turn attempts to collect on the unacceptable assets to minimize the loss to the insurance funds. *Grubb v. FDIC*, 868 F.2d at 1155 (citing *FDIC v. Merchants National Bank*, 725 F.2d at 637–38).

In this case, when the Security State Bank was declared insolvent on October 1, 1987, the FDIC accepted appointment as receiver of the Bank and took possession of the Bank's assets and affairs. The FDIC purchased the defendant's guaranty in its corporate capacity.

■ When the FDIC is deciding whether to liquidate a failed bank or to provide financing for purchases of its assets and assumption of its liabilities by another bank pursuant to 12 U.S.C. § 1823(c)(2), federal and state bank examiners are allowed to rely on bank records in evaluating the worth of the bank's assets by 12 U.S.C. § 1823(e). *See Langley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 400, 98 L.Ed.2d 340 (1987). Specifically, 12 U.S.C. § 1823(e) provides:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Any agreement which tends to diminish the right, title or interest of the FDIC in any asset acquired by it is not valid unless all four criteria are met. Otherwise, neither the FDIC nor state banking authorities would be able to make reliable evaluations of whether to liquidate or undertake a purchase and assumption agreement because bank records could contain seemingly unqualified notes which are in fact subject to undisclosed conditions. *Langley*, 484 U.S. at 92, 108 S.Ct. at 401. Further, this evaluation must be made with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services, particularly when a purchase and assumption agreement is undertaken. *Id.* at 91, 108 S.Ct. at 401.

In determining what constitutes an "agreement" for the purposes of 12 U.S.C. § 1823(e), *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) is illustrative. In that case, the petitioners borrowed money from a bank insured by the FDIC to purchase land, and executed a note and other guarantees in consideration for the loan. The bank subsequently failed and the FDIC was substituted as plaintiff in an action against petitioners for principal and interest due on a note. The petitioners defended by alleging that the bank had fraudulently misrepresented the quantity of the land and the mineral assets contained thereon. The Court stated that the defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents—would take the instrument out of § 1823(e) because it would render the instrument entirely void thus leaving no right, title or interest that could be defeated. *Id.* at 93–94, 108 S.Ct. at 402–03. However, the Court stated that the alleged misrepresentations in the instant case would not constitute fraud in the factum, but rather would constitute only fraud in the inducement which would render the note voidable but not void. *Id.* at 94, 108 S.Ct. at 402. Accordingly, the bank could transfer to the FDIC voidable title which is enough to constitute "title *or* interest" in the note within the meaning of § 1823(e). *Id.* (emphasis in original). The Court therefore held that 12 U.S.C. § 1823(e) barred the defense that the note was procured by fraud in the inducement.

■ In this case, an agreement was executed on September 11, 1987, by Blake Howsden, vice-president of Security State Bank, and the principal debtors whereby certain of debtors' property was transferred to the Bank to release obligations owing to the Bank. Pursuant to the agreement, the transfer of the collateral was to release obligations owed on several notes to the Bank by Mark Percival and the Percival Brothers Partnership, and release "Pauline Percival's guarantee of the Percival Brothers Partnership debt" (Filing No. 4, Exhibit D). As previously noted, the collateral was surrendered and sold at public auction on September 29, 1987, which

was prior to the declared insolvency of the Bank, October 1, 1987.

In *FDIC v. Nemecek*, 641 F.Supp. 740 (D.Kan.1986), the debtors were in default of a note executed in favor of the Decatur County National Bank. In November, 1984, the Bank and the defendants agreed to a settlement whereby the Bank would accept quit claim deeds on the land which secured the note in lieu of foreclosing and seeking a deficiency. On November 21, 1985, the Bank was declared insolvent and the FDIC appointed as receiver. The FDIC argued that the settlement agreement should not be enforced against it pursuant to § 1823(e). In rejecting the FDIC's argument and thereby enforcing the agreement against it, the Court stated:

> [I]n order for [§ 1823(e)] to apply, the FDIC must first have *acquired* the asset from the failed bank. This section has no application where "the parties contend that no asset exists or an asset is invalid and that such invalidity is caused by acts independent of any understanding or side agreement." (citations omitted).

*Id.* at 742. The Court held that an accord and satisfaction of the Bank's claim against the debtors had been reached prior to the FDIC's acquisition of any assets. *Id.* This was true even though a formal "release of liability" had not been signed by the Bank prior to its closure. *Id.* *Contra FDIC v. Manatt*, 688 F.Supp. 1327 (E.D.Ark.1988).

In *FDIC v. Merchants National Bank of Mobile*, 725 F.2d 634 (11th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984), the Court stated that § 1823 does not apply to every inquiry concerning an asset. It does not apply when the court determines an asset is invalid for fraud or for breach of bilateral obligations contained in the asset. *Id.* at 639. In such cases, no asset exists or the asset is invalid *and* such invalidity is caused by acts independent of any understanding or side agreement. *Id.*

■■ The magistrate, in his report and recommendation, concluded that, just as the FDIC cannot revive a cause of action which has been extinguished by the statute of limitations prior to the FDIC acquiring the claim, it should not be allowed to resurrect a claim that is barred by a state statute governing commercial relations. In either case, under state law, the cause of action is extinguished before the FDIC ever acquired the asset (Filing No. 36, p. 8). This Court finds the magistrate's reasoning persuasive. Specifically, any cause of action against the defendant was extinguished prior to the declared insolvency of the Bank.

After careful review of the report and recommendation, the briefs filed by the parties, and all the relevant law pertaining to these issues, the Court finds that the report and recommendation of the magistrate will be adopted in its entirety. The Court will order that defendant's motion for summary judgment be granted. A separate order will be entered in accordance with this memorandum opinion.

## REPORT AND RECOMMENDATION

DAVID L. PIESTER, United States Magistrate.

Pending before the court are cross-motions for summary judgment, filings # 25 and 28. Some of the issues raised by these motions were addressed, but not decided, in an earlier memorandum and order, filing # 16, in disposing of a motion for a protective order filed by the plaintiff, filing # 13. Having now submitted affidavits and documents in support of their respective positions the parties seek summary disposition of these issues by the court.

Under Rule 56 of the Federal Rules of Civil Procedure the purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). All inferences of fact must be drawn against the moving party, who carries the burden of showing that no issue of material fact exists and that it is entitled to judgment as a matter of law. *See, e.g., AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987); *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir.1987). Rule 56(c) mandates that summary judg-

ment be granted when the non-moving party fails to make a sufficient showing on an element on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In *Celotex Corp.* the Supreme Court stated:

> [W]here the non-moving party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e) ... requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court further noted that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof. *Id.*

In this action the FDIC seeks to collect on a guaranty agreement which was executed and signed by the defendant, (Affidavit of Pauline Percival, filing # 26 at ¶ 1). The guaranty was given to the Security State Bank of Oxford Nebraska on June 6, 1979 and guarantees payment up to a maximum of $35,000 on notes executed by the "Percival Brothers (Mark and Gary Percival)." (Filing # 1, Ex. "A"). The guaranty was acquired by the FDIC as part of a purchase and assumption agreement following the declared insolvency of the Bank on October 1, 1987.

As defenses to this action the defendant asserts that (1) her liability on the guaranty was extinguished on September 11, 1987 by virtue of an accord and satisfaction agreement between the principal debtor and the Security State Bank, (filing 4, Ex. "D"); (2) any right to seek a deficiency judgment against the defendant was extinguished prior to the time the FDIC entered into the purchase and assumption agreement with the assuming bank because the Security State Bank failed to provide the defendant with notice of sale of collateral as required by Neb.U.C.C. § 9–504(3), which resulted in an "absolute bar" to any deficiency judgment against the guarantor; and (3) defendant is not liable for the debts evidenced by the notes at issue herein because the guaranty was intended to apply only to the joint debts of Mark and Gary Percival not the individual debts of Mark Percival or the debts of a partnership known as the "Percival Brothers."

The plaintiff raises the seemingly invincible shield of 12 U.S.C. § 1823(e), and *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), as well as the federal common law, in support of its position that the defenses of accord and satisfaction and lack of notice pursuant to U.C.C. § 9–504(3) may not be asserted against the FDIC. The plaintiff argues that those defenses are barred either by the strict statutory requirements of § 1823(e) or by the FDIC's alleged status as a holder in due course.

In my previous memorandum on plaintiff's motion for a protective order I went into considerable detail and discussion of the case law which has addressed the issue of whether a valid accord and satisfaction may be asserted against the FDIC in suits such as the case at bar. The defendant relies almost exclusively on *Federal Deposit Ins. Corp. v. Nemecek*, 641 F.Supp. 740 (D.Kan.1986) (Kelly, J.), a decision which is not without its critics, *see e.g., Federal Deposit Ins. Corp. v. Cover*, 714 F.Supp. 455 (D.Kan.1988) (Crow, J.); *Federal Deposit Ins. Corp. v. Grupo Girod Corp.*, 680 F.Supp. 486, 491, n. 6 (D.Puerto Rico 1988).

On the other hand, the *Nemecek* opinion has support as well. Indeed, the Tenth Circuit Court of Appeals has cited *Nemecek* with approval, albeit on facts somewhat different from those in *Nemecek* or in this case. *Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151 (10th Cir.1989). *See also, Federal Deposit Ins. Corp. v. Prann*, 694 F.Supp. 1027 (D. Puerto Rico 1988). I conclude, however, for the reasons stated below, that the accord and satisfaction agreement is not the dispositive factor in this case, and therefore, I need not decide whether *Nemecek* is a correct statement of the law.

### U.C.C. 9–504(3)

It is undisputed in this case that prior to the closing of Security State Bank, Mark Percival, one of the principal debtors, voluntarily turned over to the Bank numerous items of personal property for purposes of satisfaction of his debt.[1] (Filing # 15, Response to Request for Admissions at # 9; Affidavit of Mark Percival, filing # 27 at ¶¶ 6 and 7). It is also undisputed that such collateral was presented for sale at a public auction on September 29, 1988, prior to the closing of the Bank. As a defense to this action the defendant alleges that her obligation pursuant to the guaranty agreement was extinguished prior to the FDIC taking the underlying note in the purchase and assumption agreement because, under Nebraska law, any claim for a deficiency judgment was barred as of the time of sale of the collateral without notice to the guarantor. *Allis–Chalmers Corp. v. Haumont*, 220 Neb. 509, 371 N.W.2d 97 (1985); *Deutsche Credit Corp. v. Hi–Bo Farms, Inc*, 224 Neb. 463, 398 N.W.2d 693 (1987). The plaintiff herein admits that the defendant was not notified of the September 29th sale of collateral. (Filing # 15, Response to Request for Admissions at # 23).

The defendant is correct that under Nebraska law failure of a secured party to notify a guarantor of the sale of collateral securing the underlying debt is an absolute bar to recovery of a deficiency judgment against that guarantor. In *Bank of Burwell v. Kelley*, 233 Neb. 396, 402, 445 N.W.2d 871 (1989), the Nebraska Supreme Court set forth the longstanding rule in the state:

Neb. U.C.C. § 9–504(1) (Reissue 1980) provides that after default, a secured party may sell the collateral. Insofar as is relevant to our inquiry, § 9–504(3) requires that "reasonable" notice be sent the debtor of the intended disposition of the collateral. One who guarantees payment of another's debt is a "debtor" entitled to notice pursuant to the foregoing statute. *American Honda Finance Corp. v. Bennett*, 232 Neb. 21, 439 N.W.2d 459 (1989); *General Electric Credit Corp. v. Lewis*, 230 Neb. 429, 432 N.W.2d 27 (1988); *Deutsche Credit Corp. v. Hi–Bo Farms, Inc.*, 224 Neb. 463, 398 N.W.2d 693 (1987); *Allis–Chalmers Corp. v. Haumont*, 220 Neb. 509, 371 N.W.2d 97 (1985); *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983).

We have said that "compliance with the requirements of the Uniform Commercial Code for notification as to the disposition of collateral is a condition precedent to a secured creditor's right to recover a deficiency." *First Nat. Bank & Trust Co. v. Hermann*, 205 Neb. 169, 172, 286 N.W.2d 750, 751–52 (1980), citing *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56 (1974). This rule has also been applied and followed in *American Finance Corp. v. Bennett, supra; General Electric Corp. v. Lewis, supra; Deutsche Credit Corp. v. Hi–Bo Farms, Inc., supra;* and *First Nat. Bank & Trust Co. v. Hughes, supra.* " '[T]he burden of proof is on the secured party to prove compliance with the statutory requirements of notice and reasonableness of notice.... *Failure to give notice is an absolute bar to the recovery of a deficiency.*' " *Citizens State Bank*

---

1. The items of property given are evidenced by the accord and satisfaction agreement referred to above. Again the question of whether the agreement itself extinguished either the debtors' or the guarantor's debt is not at issue for purposes of this discussion of notice to the guarantor of sale of collateral. I refer to the agreement only as evidence of the collateral surrendered, a fact which the F.D.I.C. admits.

v. *Sparks*, 202 Neb. 661, 664, 276 N.W.2d 661, 663 (1979), *citing DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976). 233 Neb. at 402, 445 N.W.2d 871. (Emphasis added).

The plaintiff attempts to avoid this defense by asserting that all of the collateral was not sold at the September 29th sale and that the surplus was sold at a later date by the FDIC following notice to the defendant as guarantor. It is apparently the plaintiff's position that this later notice and sale was sufficient compliance with U.C.C. 9–504(3) to bind the defendant to her guaranty agreement. I cannot agree.

It appears from the affidavits and documents on file that the September 29th sale of collateral, wherein the bulk of the property was sold, netted an amount sufficient to apply nearly $14,477.00 to the underlying notes at issue herein. (See filing # 32, Ex. "J," pgs. 2 of 8 and 3 of 8, "Endorsements on Principal and Interest"). In contrast, the plaintiff has provided affidavits which state that the "remaining collateral" was sold by the FDIC on February 12, 1988 and produced net proceeds of either $1,000.67 or $1067.00.[2] (Affidavit of Donald Krause, filing # 32, at 3; Affidavit of Scott Hammer, filing # 33 at 4). The record reveals that there were thirty (30) categories of livestock and property combined which were turned over to the Security State Bank, resulting in a total number of individual items far in excess of thirty. (Filing # 4, Ex. "D"). There were a total of six (6) items not sold at the September sale that represented the items sold by the FDIC in February 1988. (Filing # 33, Ex. "J" p. 7 of 8).

As noted above, the plaintiff argues that because they provided notice to the defendant as to the sale of these six remaining items of collateral prior to the February 1988 sale the "absolute bar" rule in Nebraska is inapplicable as to the FDIC. The Nebraska Supreme Court has explicitly held to the contrary. In *DeLay First Nat. Bank & Trust Co. v. Jacobsen Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976), the court was faced with a situation wherein there were five different dispositions of the property seized under the security agreements. The plaintiff bank sought a deficiency judgment after the sales against both the defendant Jacobson Appliance Co., a corporation, and its guarantor on the obligation to the bank, Victor Jacobson. In reversing the lower court's entry of a deficiency judgment against the defendants, the court discussed at some length the facts surrounding the bank's attempts, or lack thereof, to notify the defendants pursuant to § 9–504(3). The court ultimately concluded and held:

> On balance, bank either provided no notice or questionable notice to either Jacobsen or the defendant. Failure to give notice is an absolute bar to recovery of a deficiency. As we said in *Bank of Gering v. Glover* (1974), 192 Neb. 575, 223 N.W.2d 56: "If the creditor wishes a deficiency judgment, he must obey the law. If he does not obey the law he cannot secure a deficiency judgment."

> The problem herein is that there was more than one sale, some of which can be upheld. We believe the intent of the Uniform Commercial Code would appear to mandate that the entire disposition of collateral by the secured party be viewed as one transaction, and that every aspect of that transaction be in accord of the Uniform Commercial Code. To adopt any other rule would place upon the court the sometimes impossible and time-consuming task of attempting to determine the amount of recoverable deficiency as well as the amount of unrecoverable deficiency.

196 Neb. at 408, 243 N.W.2d 745. From the above quoted language it appears that the court found no need to answer the question of whether the sales accompanied by "questionable notice" amounted to "reasonable notice" within the meaning of 9–

---

**2.** The affidavits of Krause and Hammer differ as to the correct amount received from the February 12, 1988 sale.

504(3) because it ultimately held that no notice as to even one of the sales barred any action for a deficiency judgment. The court went on to summarize its holding as follows:

> We adhere to the position we adopted in *Bank of Gering v. Glover, supra.* The right to a deficiency judgment depends on compliance with the statutory requirements. *We now hold that if a creditor wishes a deficiency judgment he must comply with the law in each transaction.* While this rule may seem harsh, we are persuaded by the fact that the burden is on the secured party to comply with the law. The act is framed in his interest. It is not onerous to require him to observe the provisions of the law.

*Id.* at 409, 243 N.W.2d 745. (Emphasis added).

Clearly, Neb.U.C.C. § 9–504(3) requires that a debtor, or guarantor, *American Honda Finance Corp. v. Bennett,* 232 Neb. 21, 439 N.W.2d 459 (1989); *Deutsche Credit Corp. v. Hi–Bo Farms, Inc.,* 224 Neb. 463, 398 N.W.2d 693 (1987), be given "reasonable notification" of the "intended disposition" of collateral. In construing the purpose behind this notice requirement, the Nebraska Supreme Court has stated:

> Our first consideration in construing section 9–504 is to consider the reason for the notice provision. Obviously it is intended for the benefit and protection of the debtor. If he is given notice, he will have at least an opportunity to protect his interests by redemption, finding prospective purchasers for the property, or otherwise.

*First Nat. Bank of Omaha v. Kizzier,* 202 Neb. 369, 376, 275 N.W.2d 600 (1979). *See also, City Bank & Trust Co. v. Van Andel,* 220 Neb. 152, 157, 368 N.W.2d 789 (1985). Those purposes are equally applicable to guarantors of notes, *Deutsche Credit Corp., supra,* who may be sued for any deficiency between the amount of debt and the proceeds gained at a sale of the collateral securing the note.

The record in this case indicates that Security State Bank intended on September 29th, 1987 to dispose of, at a public auction, the property turned over by Mark Percival. It is stipulated herein that the defendant was not notified of that "intended disposition." Such omission, in accordance with Nebraska law, barred Security State Bank from seeking a deficiency judgment against the defendant on her guaranty once that sale ended. *Delay, supra.* Therefore, as of October 1, 1987 there existed no cause of action for any deficiency against this defendant on the guaranty. The fact that a small percentage of that property was not sold at that sale and was later sold by the FDIC with notice to the defendant does not revive a cause of action which was extinguished prior to the plaintiff taking over the insolvent bank. Allowing a secured party to circumvent the protections of 9–504(3) by selling, for example, ninety percent of the collateral without notice to a debtor or guarantor and then pleading compliance with facts indicating notice as to the remaining ten percent is in direct conflict with Nebraska law. *Delay, supra.* While the FDIC is to be commended for its compliance with 9–504(3) prior to the February 1988 sale, it cannot be awarded a windfall in the form of a revival of a claim which did not exist at the time it "purchased" the underlying notes. On the facts of this case, I conclude that the defendant's obligation on the guaranty was extinguished prior to the FDIC acquiring the underlying notes.

Several courts have discussed situations wherein an asset taken by the FDIC was found to be invalid or void prior to such taking. In these cases the courts have held that § 1823(e) is inapplicable to situations where opponents of the FDIC have alleged that no asset existed at the time the FDIC entered into its purchase and assumption agreement. In *F.D.I.C. v. Merchants Nat. Bank of Mobile,* 725 F.2d 634 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984), the Circuit Court held:

> Section 1823(e) does not apply to every inquiry concerning an asset. It does not apply if an asset is invalid for fraud, *see Gunter [v. Hutcheson],* 674 F.2d [862] at 867 [ (11th Cir.), *cert. denied* 459 U.S.

826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982),[3]] or for breach of bilateral obligations contained in the asset, *see Howell v. Continental Credit Corp.*, 655 F.2d 743, 746–48 (7th Cir.1981) (inadequate consideration); *Riverside Park Realty Co. v. FDIC*, 465 F.Supp. 305, 312–13 (M.D. Tenn.1978) (breach of loan agreement). In such cases the parties contend that *no asset exists and that such invalidity is caused by acts independent of any understanding or side agreement.*

725 F.2d at 639 (Emphasis added). *See also, Langley v. Federal Deposit Insurance Corporation*, 484 U.S. 86, 89, 108 S.Ct. 396, 399, 98 L.Ed.2d 340 (1987) (§ 1823(e) does not apply to instruments rendered void by real defense of fraud in the factum); *Federal Deposit Ins. Corp. v. Blue Rock Shopping Center*, 766 F.2d 744, 753 (3rd Cir.1985) ("Section 1823(e) does not ... protect FDIC against all defenses."). In this case I agree with the defendant that her obligation on the guaranty was extinguished prior to the FDIC acquiring the underlying notes through the purchase and assumption agreement. This defense to an obligation on the guaranty is premised on the invalidity of that obligation due to "acts independent of any understanding or side agreement," i.e., acts of the bank in failing to abide by state law in disposing of the collateral securing the loan, and therefore § 1823(e) is inapplicable as a bar to that defense.

The plaintiff asserts that this court has previously rejected such a 9–504(3) defense in *Federal Deposit Ins. Corp. v. Ritchie*, 646 F.Supp. 1581 (D.Neb.1986). Indeed the facts of these cases are similar to the extent that the defendant/guarantors both allege that Nebraska's absolute bar rule of 9–504(3) precludes the FDIC from recovering a deficiency judgment when the bank which held their guaranty agreements gave no notice or inadequate notice prior to the sale of collateral securing the underlying debt. In *Ritchie*, however, the defendant apparently did not argue that the guaranty obligation was extinguished, thus leaving no "asset" available for acquisition, prior to the FDIC's purchase and assumption. The court in *Ritchie* did not discuss or answer the question of whether the FDIC could revive a cause of action which was extinguished before that entity "acquired the asset." Just as the FDIC cannot revive a cause of action which under state law has been extinguished by the statute of limitations prior to the FDIC acquiring the claim, *Federal Deposit Ins. Corp. v. Hinkson*, 848 F.2d 432, 434 (3rd Cir.1988), *citing, Guaranty Trust Co. v. United States*, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938), *See also, Federal Deposit Ins. Corp. v. Consolidated Mortg.*, 805 F.2d 14, 17–18 n. 4 (1st Cir.1986); *Federal Deposit Ins. Corp. v. Galloway*, 856 F.2d 112, 115 n. 2 (10th Cir.1988); *Federal Deposit Ins. Corp. v. Cardona*, 723 F.2d 132, 134 (1st Cir.1983); *Federal Deposit Insurance Corporation v. Bird*, 516 F.Supp. 647 (D.P.R. 1981), *on remand, F.D.I.C. v. Consolidated Mortg. and Finance Corp.*, 691 F.Supp. 557, 560 (D. Puerto Rico 1988); *Federal Deposit Ins. Corp. v. Barrera*, 595 F.Supp. 894, 898 (D. Puerto Rico 1984); *Federal Deposit Ins. v. Norberto Medina Realty*, 633 F.Supp. 24 (D.P.R.1986), it should not be allowed to resurrect a claim that is barred by a state statute governing commercial relations. In either case, under state law, the cause of action is extinguished before the FDIC ever acquired the asset.

FDIC also asserts in the alternative the protections of holder in due course status to defenses such as those raised by the defendant, including the 9–504(3) defense. Some courts have indeed intimated, and in other cases it has been expressly held, that the FDIC enjoys the status of holder in due course when it takes assets pursuant to a purchase and assumption agreement in its corporate capacity. Several of the cases cited by the plaintiff as supporting its posi-

---

**3.** As mentioned in this report below, the *Gunter* holding was disapproved by the United States Supreme Court in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) wherein the Court held that the word "agreement" within § 1823(e) was broad enough to include the kinds of material terms or warranties asserted by the appellants in their fraud in the inducement defense.

tion in fact do not expressly hold that the FDIC is always a holder in due course. For instance in *Federal Deposit Ins. Corp. v. Galloway*, 856 F.2d 112 (10th Cir.1988) the Circuit Court of Appeals did indeed reverse the district court's judgment, 613 F.Supp 1392 (D.Kan.1985), but it did not do so on the basis that it disagreed with the lower court's holder in due course discussion. In *Galloway* the Tenth Circuit held merely that § 1823(e) did bar the guarantor's fraud-in-the-inducement defense against the F.D.I.C. because, contrary to the district court's holding, the underlying misrepresentation was an "agreement" within the meaning of that section. The premise behind the circuit court's opinion was not based in any way on whether the FDIC was a holder in due course.

■ Undoubtedly the Sixth Circuit continues to adhere to its holding in *Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156 (1985) in which the court determined that federal common law, based largely on public policy considerations, requires such status. The court reached its decision after analysis pursuant *United States v. Kimball Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) wherein the Supreme Court set forth the determinative factors on the necessity of the adoption of a national rule to govern cases involving federal agencies. As the discussion below indicates, however, I conclude that under the facts of this case state law should form the content of the federal rule, and thus the FDIC cannot be said to enjoy the holder in due course status.

■ In assessing whether a uniform federal rule is called for, this court is required to engage in the analysis which the Supreme Court set forth in *United States v. Kimbell Foods, Inc., supra, see, e.g., FDIC v. Blue Rock Shopping Center*, 766 F.2d 744, 747–49 (3d Cir.1985); *FDIC v. Gulf Life Ins. Co.*, 737 F.2d 1513, 1516–18 (11th Cir.1984); *Gunter v. Hutcheson*, 674 F.2d 862, 868–73 (11th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *FDIC v. Rodenberg*, 571 F.Supp. 455, 459–60 (D.Md.1983). In *Kimbell Foods, supra,* the Court identified two

questions which are to be resolved: (a) whether federal law governs the substantive issue at hand; and (b) whether the court, in determining the content of the federal law, is to apply a federal uniform rule of decision or incorporate the diverse laws of the various states as the federal law. 440 U.S. at 726–40, 99 S.Ct. at 1457–65. The first question has already been decided by the Supreme Court in *D'Oench, supra,* where the Court held that federal law governs the rights and obligations of the FDIC, a governmental body acting under Congressional authority to protect and stabilize the nation's banking system.

The second question, however, requires closer analysis. In determining the content of the federal law, the Court in *Kimbell Foods* identified the following three factors to be considered: (i) the need for national uniformity; (ii) the extent to which specific objectives of the federal program would be frustrated by the application of state law; and (iii) the extent to which commercial relations predicated upon state law would be disrupted by the application of a uniform federal rule of decision. *Id.*, 440 U.S. at 728–29, 99 S.Ct. at 1458–59. The final decision must be the result of a careful balancing of the relative interests at stake, and not some simple mathematical process of adding up the factors which fall on each side. *Id.* Upon careful consideration, I conclude, as I did in *Federal Deposit Insurance Corporation v. Mid–America Dairymen, Inc.*, 1986 WL 15733, CV85–L–540 (D.Neb.1986), that the Uniform Commercial Code as adopted by the state where the transactions occurred should provide the federal rule of decision. Because the Nebraska U.C.C. provides a convenient resolution not inconsistent with adequate protection of the federal interests involved, I must "decline to override intricate state laws of general applicability on which private [business people] base their daily commercial transactions." 440 U.S. at 729, 99 S.Ct. at 1459.

As the courts did in *Gulf Life, supra,* and *Gunter, supra,* I acknowledge the first two factors point in favor of applying a uniform rule of federal decision.

**324**

"[N]ational uniformity is important to permit the FDIC to promote the stability and confidence in our nation's banking system." *Blue Rock Shopping Center, supra,* 766 F.2d at 748. In determining between liquidation or purchase and assumption agreements, the FDIC must act quickly; requiring it to consider the diverse laws of the various states could impede its ability to make a considered opinion in carrying out its function of best protecting against a loss due to the failure of a bank. *See Gulf Life, supra,* 737 F.2d at 1517. However, regarding the third factor, disruption of commercial relations, the interests of predictability and reliability *are* sufficiently strong to require that state law form the content of the federal rule.

◼ In *Wood* the Sixth Circuit noted as to the third *Kimbell* factor that allowing the FDIC the status of holder in due course would cause no disruption of commercial relationships predicated on state law. The court stated:

> A *negotiable* instrument is subject to transfer at any time, and the maker must always be aware that the transferee may be a holder in due course. From the maker's view there is no difference between his bank failing and the note going to the corporate FDIC, and his bank failing and selling the note to a holder in due course.

*Wood,* 758 F.2d at 161 (emphasis added). That analysis is simply inapplicable to the facts of this case. As was the case in *Galloway, supra,* this case involves a guaranty agreement, which according to Nebraska law, as well as most other states due to the adoption of the Uniform Commercial Code,[4] *is not a negotiable instrument. Aetna Cas. & Surety Co. v. Nielsen,* 217 Neb. 297, 348 N.W.2d 851 (1984).[5]

In accordance with U.C.C. § 3–104, guaranty agreements do not contain "unconditional promises to pay a sum certain" and are not payable on demand or at a time certain. *Id* at 300, 348 N.W.2d 851.

Despite the fact that the district court's opinion in *Galloway* was reversed by the Tenth Circuit, as I noted above the reversal was not based on the lower court's holder in due course analysis. For that reason I conclude that the lower court's discussion in *Galloway* as to the FDIC's holder in due course status remains persuasive. The district court in *Galloway* aptly noted the desirability and equity in distinguishing holder in due course status for negotiable and non-negotiable instruments.

Because the U.C.C. has been widely adopted, nearly every state has the same definition of "negotiable instrument." Thus, the FDIC can easily separate a failed bank's financial instruments into negotiable and non-negotiable categories. Protected by the holder in due course rule, the FDIC would have no need to engage in a close examination of the negotiable instruments. Assuming, as did the *[F.D.I.C. v.] Gulf Life [Ins. Co., 737 F.2d 1513 (11th Cir.1984)]* court, that most of a failed bank's instruments would be negotiable, the FDIC should be able to examine the non-negotiable instruments in some detail. To account for possible personal defenses, the FDIC might discount the price it would pay for such instruments. Again, given the apparently small number of non-negotiable instruments, the overall effect of such discounting should be minimal.

Not only would such an alternative be feasible for the FDIC, it would clearly be more equitable for parties to non-negotiable instruments. By choosing not to

---

**4.** Courts which have granted the F.D.I.C. holder in due course status have clearly stated that under state law that entity could not attain such status. *See, e.g., Federal Deposit Ins. Corp. v. Ohlson,* 659 F.Supp. 490, 492 (N.D.Iowa 1987) (note not taken in the ordinary course of business).

**5.** Interestingly, in *Federal Deposit Ins. Corp. v. Hardt,* 646 F.Supp. 209 (C.D.Ill.1986), the FDIC sought the protection *of* the Illinois Uniform

Commercial Code, rather than protection *from* state law, under which a guaranty does not meet the negotiable instrument definition, in a case where a guarantor attempted to assert a § 3–606 defense of "unjustifiable impairment of collateral." The FDIC successfully argued that such a defense could not be asserted against it because under Article 3 of the U.C.C. a guaranty was not a negotiable instrument, and thus, a § 3–606 defense would be inapplicable.

comply with the requirements for nego-tiability, one who executes a non-nego-tiable instrument makes a conscious deci-sion *not* to waive any personal defenses he might have. Similarly, a bank's ac-ceptance of a non-negotiable instrument is presumably a voluntary act. Indeed, logic suggests that parties would struc-ture their financial transactions quite dif-ferently if another party were allowed to announce that a previously non-nego-tiable instrument were suddenly to have all the attributes of negotiability.

*Galloway*, 613 F.Supp. 1403 (Emphasis in original).

■ Aside from the non-negotiability of the instrument, the FDIC fails to meet other elements of holder in due course stat-ute in Nebraska. Under Neb.U.C.C. § 3–302:

> (1) A holder in due course is a holder who takes the instrument
>
> (a) for value; and
>
> (b) in good faith; and ·
>
> (c) without notice that it is overdue or has been dishonored or of any defense or claim to it on the part of any person.

Arguably the FDIC would have difficulty ever meeting the "without notice" require-ment of the statute if for no other reason than the fact that the FDIC in its corporate capacity, through a purchase and assump-tion agreement, buys "assets that were unacceptable to the assuming bank (usually classified and non-performing loans." (Plaintiff's brief, p. 9). By their very na-ture the loans purchased by the FDIC in its corporate capacity are high-risk loans often either "overdue" or "dishonored." If not, the assuming bank would likely have pur-chased the asset.

Additionally, § 3–302 states, in relevant part:

> (3) A holder does not become a holder in due course of an instrument:
>
> *   *   *   *   *   *
>
> (c) by purchasing it as part of a bulk transaction not in regular course of busi-ness of the transferor.

Indeed, the official comment to the U.C.C. states that this subsection (3) was intended to cover "a few situations in which the purchaser takes the instrument under un-usual circumstances which indicate that he is merely a successor in interest to the prior holder and can acquire no better rights." The comment further indicate that the "provision applies to a purchaser at an execution sale, a sale in bankruptcy or a *sale by a state bank commissioner of the assets of an insolvent bank.*" Neb.U.C.C. 3–302, Official U.C.C. Comment 3. (Emphasis added). As to subsection (3)(c), the comment states that this subsection "has particular application to the purchase by one bank of a substantial part of the paper held by another bank which is threat-ened with insolvency and seeking to liqui-date its assets." *Id.* Undoubtedly, the drafters of the Uniform Commercial Code did not intend for situations such as "pur-chase and assumption" agreements by an entity like the FDIC to carry the status of holder in due course.

For all the reasons stated above, under Nebraska law, the FDIC could not attain the status of holder in due course, espe-cially in this case where a non-negotiable instrument is involved. As noted by the Sixth Circuit in *Wood*, "although section 1823 manifests the congressional intent to protect the FDIC, it does not itself autho-rize holder-in-due-course status." 758 F.2d 159. Nor did the *D'Oench* opinion confer such status upon the FDIC. As of today the FDIC's status as a holder in due course has emanated from the courts, on a case-by-case basis pursuant to an analysis of the *Kimbell* factors. Such status could have been granted by Congress, as were the broad protections of § 1823(e), but to date such is not the case.

The plaintiff in this case can point to several cases which have indeed discussed the applicability of holder in due course status as to the FDIC. However, aside from the Sixth Circuit's opinion in *Wood*, most, if not all, of these discussions are purely dicta. In *Firstsouth, F.A. v. Aqua Const., Inc.*, 858 F.2d 441 (8th Cir.1988), a case involving a suit by the FSLIC against two guarantors on a note, the Eighth Cir-cuit discussed at some length the applica-bility of the law relating to similar FDIC

cases and ultimately held that the protections of § 1823(e) would apply by analogy to suits involving the FSLIC. In *Firstsouth* the court spent considerable time discussing whether the FSLIC enjoyed the status of holder in due course by analogizing to case law involving the FDIC and specifically case law dealing with accommodation makers. The result in all of the cases cited by the court, however, again with the exception of *Wood* which involved suit against a maker, rested on the broad protections afforded the FDIC by § 1823(e). In *Federal Deposit Ins. Corp v. P.L.M. Intern., Inc.,* 834 F.2d 248 (1st Cir. 1987), which was cited as a case holding that the FDIC was a holder in due course as to a non-negotiable instrument, the First Circuit held that § 1823(e) covered negotiable as well as non-negotiable instruments and that any attempt by guarantors to raise a defense based on an oral side agreement limiting their liability must fail. In rejecting the defendant/guarantor's argument that the FDIC was not a holder in due course and that therefore any personal defense could be interposed, the court did not explicitly set forth the obvious answer, i.e., holder in due course status is of no consequence to the applicability of § 1823(e). In all of the other cited cases, *FDIC v. Venture Contractors,* 825 F.2d 143, 150 (7th Cir.1987); *Public Loan Co. v. FDIC,* 803 F.2d 82, 84–85 (3rd Cir.1986); *FDIC v. Castle,* 781 F.2d 1101, 1108 (5th Cir.1986); *FDIC v. Waldron,* 630 F.2d 239, 241 (4th Cir.1980), the courts held only that § 1823(e) defeated the asserted defenses of oral side agreements limiting liability. Indeed, in *Firstsouth* itself, the Eighth Circuit did not base its conclusion on holder in due course status. The court held that, with or without holder in due course status, the protections of § 1823(e), which applied to the FSLIC by analogy, barred the guarantors from asserting a defense based on an oral side agreement.

Additionally, the plaintiff herein cites the case of *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982), in support of the proposition that the FDIC enjoys holder in due course status. First, the *Gunter* case, as in *Wood,* dealt with a suit against a *maker*

of a note, not a guarantor of that note. Second, the discussion of the FDIC's holder in due course status was necessitated only by the Eleventh Circuit's conclusion that a defense of fraud in the inducement/misrepresentation was not barred by § 1823(e) because it did not involve an "agreement" within the meaning of that statute. That holding of the Eleventh Circuit was rejected by the United States Supreme Court in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). Therefore, the precedential value of *Gunter*'s discussion of the FDIC's holder in due course status is at least questionable and is, in any event, unnecessary in analyzing such a case today given the expansive reading of the word "agreement" within § 1823(e) by the Supreme Court in *Langley.*

Plaintiff further relies upon *Federal Deposit Ins. Corp. v. Armstrong,* 784 F.2d 741 (6th Cir.1986), a case again involving a maker of a note as well as a case in which the court held that summary judgment for the FDIC was proper based on § 1823(e). Additionally, plaintiff cites several federal district court cases supporting its position, *FDIC v. Ohlson,* 659 F.Supp 490 (N.D.Iowa 1987); *FDIC v. Burger,* 631 F.Supp. 1141 (D.Kan.1986); *FDIC v. Vestring,* 620 F.Supp. 1271 (D.Kan.1985); *FDIC v. Ramsey,* 612 F.Supp. 326 (D.Tenn.1985); and *FDIC v. Leach,* 525 F.Supp. 1379 (E.D. Mich.1981). All of these cases involve suits against *makers* of the notes being sued upon, and all of the cases, with the exception of *Ramsey* and *Ohlson* which rely on *Wood* and *Gunter* respectively, involve alternative holdings that § 1823(e) bars the asserted defenses.

It is clear that nearly all the case law relied upon by the plaintiff either involves suits against *makers* of notes and/or are cases wherein the courts discussed the applicability of the holder in due course status as merely an alternative to the protections of § 1823(e). As noted above, analogizing to cases involving suits against makers of notes ignores the qualitative difference between the expectations of guarantors who sign non-negotiable instruments and never expect to face holders in due

course, and the expectations of makers who sign an instrument fully aware of its transferability. Holder in due course status is entirely inappropriate as against guarantors, given the entirely different expectations of a party who signs an instrument which is at its inception non-negotiable. While commercial law may fairly hold makers to the expectations and potential pitfalls of transferability of notes, such cannot be said for guarantors of those notes. In the case of non-negotiable instruments the FDIC should not be granted a status superior to any and all others under the guise of public interest. The status of holder in due course was created to promote security and stability in commercial transactions. Granting such protections to an entity which fails to meet the well-entrenched criteria for such status is disruptive of that commercial system, especially in cases such as this.

Courts which have granted this status to the FDIC have done so in the name of the security of the nation's banking system, i.e., the public interest, certainly a lofty and well intentioned ideal. I must respectfully suggest, however, that that goal will be better served by adhering to the uniform system of banking laws as they exist, rather than carving a judicially-created exception dependent solely upon the identity of the party asserting it. Indeed, to do otherwise flouts the notion of "a government of laws and not of men." If the § 9–504(3) defense can be disregarded because the plaintiff is the FDIC, it would seem other sections of the U.C.C. could also be disregarded. Such action has the potential for substantial disruption of banking and lending practices, which certainly would not further the goals of security and stability in the commercial community.

Despite the cases to the contrary as to makers of notes, I cannot agree that the plaintiff herein took this non-negotiable instrument as a holder in due course. There-

fore, I conclude that the defendant's 9–504(3) defense is not barred because, on the facts of this case, the plaintiff cannot assert the protections of holder in due course status.

▮ Although neither of the parties address the issue, I note that there is language in the guaranty agreement which could be construed as a waiver of the defendant's right to assert the § 9–504(3) defense.[6] To the extent that any or all of such language might be construed as a waiver of the defendant's right to assert a lack of notice defense, under Nebraska law such language is ineffective to accomplish that purpose. In *Borg–Warner v. Watton*, 215 Neb. 318, 338 N.W.2d 612 (1983), the Nebraska Supreme Court rejected appellants argument that the appellee/guarantors, although entitled to notice under 9–504(3), had waived in writing any right to such notice. The court held:

> The Uniform Commercial Code makes it quite clear that the requirement of giving notice pursuant to Neb. § 9–504(3) (Reissue 1980) may not be waived prior to default. See Neb.U.C.C. § 9–501(3)(b) (Reissue 1980). Other courts which have considered this matter have likewise so concluded. See, *Norton v. Nat. Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966); *Commercial Credit Corp. v. Lane*, 466 F.Supp. 1326 (M.D.Fla.1979); *Barnett v. Barnett Bank of Jacksonville N.A.*, 345 So.2d 804 (Fla.App.1977); *Commercial Discount Corp. v. Bayer*, 57 Ill.App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926 (1978); *Chase Manhatten Bank, N.A. v. Natarelli*, 93 Misc.2d 78, 401 N.Y.S.2d 404 (1977); *Ford Motor Credit Co. v. Lototsky*, 549 F.Supp. 996 (E.D.Pa.1982).

215 Neb. at 324, 338 N.W.2d 612. Therefore, to the extent that the quoted language from the guaranty agreement may have been intended to waive, as of the time

---

**6.** The guaranty states, in relevant part:

The Bank is authorized to modify any agreements regarding collateral without limitation, and may sell, exchange, cancel, release, surrender, realize upon or otherwise deal with in any manner and in any order all or any part of the collateral, security and property pledged to secure the indebtedness, and such modifications of agreements or such dealings with collateral, security or property shall not impair, diminish or affect in any manner the liability of the undersigned.

of the agreement, any right to notice of sale of the collateral, that provision is ineffective as a matter of law.

For the reasons set forth above I conclude that the defendant's motion for summary judgment should be granted based on the fact that any cause of action on the guaranty agreement had been extinguished due to the actions of the insolvent bank prior to the FDIC taking the underlying notes. My conclusion precludes the need to decide the remaining issues raised by the parties with respect to the third defense.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Lyle E. Strom, pursuant to 28 U.S.C. 636(b)(1)(B), that the defendant's motion for summary judgment, filing # 25, be granted, and that the plaintiff's motion for summary judgment, filing # 28, be denied.

The plaintiff is hereby notified that unless objection is made within ten days after being served with a copy of this recommendation, it may be held to have waived any right it may have to appeal the court's order adopting this recommendation.

Dated December 20, 1989.

### MEMORANDUM

On December 20, 1989 I issued a report and recommendation in this case concerning the parties' motions for summary judgment. At the time that report and recommendation was entered I had not had the benefit of reading the decision of the Eighth Circuit Court of Appeals in *Federal Deposit Insurance Corporation v. Newhart*, 892 F.2d 47 (8th Cir.1989). Because the *Newhart* decision predated my report and recommendation and because it touches upon one of the issues in this controversy, I have decided to supplement my earlier discussion so as to include consideration of this case. I note that an objection to my report and recommendation has been filed in this case, and on the face of that objection there is no mention of the *Newhart* opinion. I have not read briefs submitted to the court on the objection to the recommendation, so I am not aware of any arguments the parties may have made regarding the applicability of the *Newhart* decision to this case. As explained below, my reading of the *Newhart* opinion leads me to conclude that it should not alter my recommendation in this case.

In *Newhart*, the FDIC, in its corporate capacity, acquired the notes being sued upon pursuant to a normal purchase and assumption transaction which followed the takeover of an insolvent bank by the FDIC in its capacity as a receiver. Following purchase of the notes the FDIC sued Newhart, a surety on the notes, and while suit was pending, the FDIC sold most of the notes sued upon to Merchants Asset Management Corporation (hereinafter "Merchants"), which was substituted as party plaintiff. As a defense to the action Newhart attempted to assert, inter alia, an oral "side agreement" between himself and the insolvent bank, to the effect that the bank would not look to Newhart for repayment. The district court in *Newhart* held, and the Eighth Circuit affirmed, that 12 U.S.C. § 1823(e) barred such a defense as against the FDIC, citing *D'Oench, Duhme & Co., v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). 892 F.2d at 49–50. In addition, the *Newhart* opinion established for the first time that such a defense was also barred as against Merchants, which took the notes with the same protections afforded the FDIC through § 1823(e).

In reaching its decision the Court of Appeals used expansive language to intimate, if not seemingly to hold, that both the FDIC and Merchants had acquired holder in due course status. A careful reading of the opinion indicates that the use of this expansive language was not necessary to the opinion, and I therefore conclude that it was dicta. Further comment is necessary to explain my reasons for this conclusion.

First, the "side agreement" at issue in *Newhart* was the classic type of agreement which 12 U.S.C. § 1823(e) was designed to make ineffectual. The statute and the Supreme Court's decisions in *D'Oench, Duhme, supra* and *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), also cited in the opinion, fully supported the conclusion of the court that Newhart could not assert his side agree-

ment as a defense against the FDIC. Carrying this defense bar one step further, to the benefit of Merchants, was accomplished by applying the provisions of U.C.C. § 3–201(1), which provides that a transfer of an instrument vests in the transferee such rights as the transferor had. Thus, the decision of the Court of Appeals, and the district court, was complete without reference to the phrase "holder in due course."

Secondly, unfortunately, the Court of Appeals mentioned the phrase "holder in due course" in connection with the protective policy embodied in § 1823(e), as if the two doctrines were synonymous. As pointed out in the memorandum accompanying my recommendation in this case, however, no court has so held specifically. In fact, the two doctrines emerge from widely differing backgrounds, and while there certainly are areas of overlap and similarity, the two are not synonymous. The district and circuit court opinions in *Newhart*, as well as the bankruptcy opinion relied upon by the Eighth Circuit, *In re Hood*, 95 B.R. 696 (Bkrtcy.W.D.Mo.1989), all have relied in large part upon *FDIC v. Wood*, 758 F.2d 156 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985) to support holdings that the FDIC, via § 1823(e), enjoys the status of a holder in due course. In fact, the Sixth Circuit in *Wood* explicitly stated:

> [A]lthough § 1823 manifests the congressional intent to protect the FDIC, *it does not itself authorize holder-in-due-course status.* (Citations omitted). If the FDIC has that status, it must be as part of the federal common law.

*Id.* at 159 (emphasis added). As I stated in my earlier report, the *Wood* court then went on to analyze the case under the factors set forth in *United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), and determined that *on the facts before it* the FDIC must be vested with holder in due course status for purposes of national uniformity. I respectfully suggest that treating the protections of § 1823(e) and those of a holder in due course as interchangeable and synonymous is simply a misreading of *Wood, supra.*

Third, neither the *Newhart* opinion nor the district court opinion, embodied any analysis of the statutory requirements of a holder in due course. U.C.C. § 3–302. The lack of such a discussion persuades me that the use of the phrase in the opinion was merely an unfortunate expansive use of terms in describing the protections of § 1823(e), and not a holding of the case.

While the FDIC's status as a holder in due course was irrelevant to the disposition of *Newhart*, it is a crucial issue in this case, due to the defendant's § 9–504 "lack of notice" defense. Such a defense clearly falls outside the scope of § 1823(e), in that it is not dependent upon any "side agreement" between the guarantor and the insolvent bank. Thus, it is necessary in this case for the court to carefully review the requirements of holder in due course status in order to determine whether the FDIC meets the statutory criteria. In my report and recommendation I concluded that in the circumstances of this particular case, the FDIC does not meet those criteria. Nothing in the *Newhart* opinion causes me to waiver from that conclusion.

Dated January 9, 1990.