United States Court of Appeals,

Fifth Circuit.

No. 93-5262.

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee-Appellant,

v.

Rory S. McFARLAND, et al., Defendants,

Rose Long McFarland, Co-trustee, Defendant-Appellant.

Premier Venture Capital Corp., Third Party Defendant-Appellee,

David L. Jump, Third Party Defendant Intervenor-Plaintiff-Appellee.

Oct. 5, 1994.

Appeals from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, SMITH and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

This suit concerns the FDIC's attempt to recover from viable loans found in a failed bank's portfolio. Two related appeals emerged from one trial and one memorandum opinion of the district court.

Rose Long McFarland appeals the district court's enforcement under 12 U.S.C. § 1823(e) of a continuing guaranty agreement which she contends was released prior to the FDIC's acquisition of the notes which it secured. Concluding that § 1823 does not apply to the release, we reverse the district court's decision holding Rose McFarland liable under her continuing guaranty. FDIC appeals the district court's ruling that a special mortgage held by the failed bank as collateral did not cover oil and gas produced from lands

that were previously part of the lease but were declared subject to a different lease prior to the time the bank took the lease as collateral. Finding no error in the district court's resolution of this issue, we affirm.

## I. THE RELEASE

### A.

Rose McFarland executed a Continuing Guaranty Agreement of $450,000, dated September 4, 1980, guarantying all debts and liabilities to the Bank of Commerce (BOC) incurred by her son, Rory McFarland. In January 1981, a bank officer wrote a letter to Rory Mcfarland, advising him that the bank had misplaced Rose McFarland's Guarantee Agreement and requesting a replacement guaranty, which they provided. The letter was found in the bank's files after FDIC took control.

In the early 1980's, Rory Mcfarland obtained the three loans from the BOC that are the subject of this suit. One of the loans was made to New Age Industries, Inc. and Rory Mcfarland *in solido,* and was secured by a lien on equipment and Rose McFarland's continuing guaranty. The other two loans were made to Rory Mcfarland personally and secured primarily by an interest Rory Mcfarland held in some offshore minerals, a pledge of life insurance on Rory Mcfarland's life, and Rose McFarland's continuing guaranty. In 1985 these loans were restructured and increased. The New Age loan was not involved in the restructuring. Rory Mcfarland paid a 17 origination fee, an increased rate of interest, and agreed to the cancellation of a $500,000 line of credit which

2

he had previously received from the bank, in return for the release of Rose McFarland's Guaranty Agreement and an increased loan balance. Two of the bank officers wrote Rory Mcfarland a letter dated April 2, 1985, delineating the terms of his re-structured loan and stating the bank's agreement to release Rose McFarland from the 1980 Guaranty Agreement. Rory Mcfarland was to sign and return if he agreed to the terms, which he did. At approximately the same time, the bank returned an executed copy of the Guaranty Agreement to Rory Mcfarland and he destroyed it.

The minutes of the Directors Loan Committee reflect that on March 8, 1985 two loans were approved for Rory Mcfarland and his $500,000 line of credit was canceled. The listed collateral included a requirement that Rose McFarland's Guaranty agreement be increased to $1,750,000. On March 15, 1985 the Officer's Loan Committee approved the same package. Rory Mcfarland refused this loan structure and continued to negotiate, finally agreeing to the terms set forth in the April 2, 1985 letter. The promissory notes, executed by Rory Mcfarland on April 5, 1985, list the collateral for the notes and there is no reference in either note to a Guaranty by Rose McFarland. The minutes from the Director's Loan committee held on April 30, 1985 note the new renewal loans to Rory Mcfarland and list collateral for the loan, which did not include the guarantee.

On June 13, 1986 the bank was closed and FDIC was appointed receiver. In an assignment dated January 1991, the FDIC as Receiver assigned Rory Mcfarland's notes to FDIC in its corporate

3

capacity, stating that the assignment was effective as of June 13, 1986.

At the time FDIC examined the bank records to determine the value of the Rory Mcfarland loan asset, the records included the letter requesting a replacement of Rose McFarland's continuing guaranty, an executed copy of Rose McFarland's Guaranty Agreement, the letter releasing it, the minutes of the Loan Committees listed above, and a "Relationship Report" (summary of customer's indebtedness) for Rory Mcfarland dated October 15, 1985 (6 months after the release) which still listed Rose McFarland's Guaranty as collateral for Rory Mcfarland's notes.

Rory Mcfarland defaulted and Rose McFarland did not pay anything on the disputed Guaranty. FDIC-Corporate brought this suit. After bench trial, the district court held that 12 U.S.C. § 1823(e) applied to the release and found that the release failed to meet the requirements of § 1823(e),[1] so the bank's release of Rose McFarland's Guaranty was not valid against FDIC. Specifically, the district court found that the release was not executed by Rose

---

[1] 12 U.S.C. § 1823(e) provides: "No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver, of any insured depository institution, shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution."

McFarland and that the bank's loan committee minutes do not "reflect" the release.

B.

The district court decided this case after conducting a bench trial. Our standard of review for bench trials is well established: findings of fact are reviewed for clear error; legal issues de novo. *Seal v. Knorpp,* 957 F.2d 1230, 1233 (5th Cir.1992). The district court held that 12 U.S.C. § 1823(e) precluded Rose McFarland from raising the release agreement as a defense against FDIC. We review de novo the applicability of § 1823(e) to this case.

Section 1823 is the statutory counterpart to *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Courts often consider the *D'Oench, Duhme* doctrine and § 1823(e) in tandem, looking to the common law when construing the statute. *Beighley v. FDIC,* 868 F.2d 776, 784 (5th Cir.1989). Section 1823(e) and *D'Oench, Duhme* basically prohibit the enforcement against the FDIC of undisclosed agreements that would tend to diminish the FDIC's interest in an asset acquired from the failed bank. The purpose behind § 1823(e) and *D'Oench, Duhme* is to allow federal and state bank examiners to rely on a bank's records in evaluating the bank's assets, ensuring mature consideration of unusual loan transactions by senior bank officials, and preventing fraudulent insertion of new terms, with collusion of bank employees, when the bank appears headed for failure. *Langley v. FDIC,* 484 U.S. 86, 91-92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340

5

(1987).

The purposes of § 1823 and *D'Oench, Duhme* are not implicated in the agreement to release Rose McFarland's guaranty. There was no question of collusion, fraud, or bad faith. There was no undisclosed or secret agreement. Rather, the release of Rose McFarland's guaranty was negotiated at arm's length in conjunction with the renewal of two of Rory Mcfarland's loans, and the release is reflected in the loan documents. At least with respect to the renegotiated loans, the release of Rose McFarland's guaranty with respect to these two loans falls within an exception to the *D'Oench, Duhme* doctrine recognized in this circuit.

This Court has held that *D'Oench, Duhme* does not apply where the agreement which the FDIC seeks to avoid is spelled out in the loan agreement. *FDIC v. Laguarta,* 939 F.2d 1231 (5th Cir.1991); *see also FDIC v. Waggoner,* 999 F.2d 826, 828 (5th Cir.1993). We have come close to explicitly applying this principle to § 1823(e) as well. *See Bank One Texas National Association v. Morrison,* 26 F.3d 544, 551 (5th Cir.1994) (stating that "[t]he integrated loan documents which evidence the parties agreement satisfy the notoriety requirements of *D'Oench, Duhme* and § 1823(e)"). Other courts have applied this principle to 1823(e). *E.g., Commerce Federal Sav. Bank v. FDIC,* 872 F.2d 1240 (6th Cir.1989); *Riverside Park Realty Co. v. FDIC,* 465 F.Supp. 305, 313 (M.D.Tenn.1978); *see also, Howell v. Continental Credit Corp.,* 655 F.2d 743 (7th Cir.1981) (holding that neither *D'Oench, Duhme* nor § 1823 applies where "the document FDIC seeks to enforce is one ... which facially

6

manifests *bilateral* obligations and serves as the basis of the lessee's defense").  We agree with the Sixth Circuit that "The language of 1823(e), which provides that "[n]o *agreement* which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquires by it under this section ... shall be valid against the Corporation,' indicates that it applies only to an action or defense which is anchored in an agreement separate and collateral from the instrument which the FDIC is seeking to protect." *Commerce Federal Savings Bank v. FDIC,* 872 F.2d at 1244.  We hold that 12 U.S.C. § 1823(e) applies only to separate and collateral agreements;  not to agreements found in the loan documents themselves.

In the instant case, the agreement to release Rose McFarland was contained in the loan agreement, executed by the bank and Rory Mcfarland and maintained in the bank's files.  The terms of the loan renewals were set out in a letter from the president and executive vice president of the bank to Rory Mcfarland.  Rory Mcfarland was to sign the letter and return it if he agreed to the terms.  Rory Mcfarland signed and returned the letter and the notes were executed under the terms set out in the letter, not the terms reflected in the minutes of either the Directors Loan Committee or the Officers Loan Committee.

The fact that the release is not evidenced on the promissory note does not mean that it is not contained in the loan documents. *Laguarta* rejects the notion that the "loan documents" includes only the promissory note.  *Laguarta,* 939 F.2d at 1239.  The letter from

the bank's officers setting out the terms of the loan, which was signed by the bank and Rory Mcfarland and maintained in the bank's files, is clearly one of the loan documents and is not collateral to the renewal note. *See id.* The release of Rose McFarland's guaranty is therefore effective against the FDIC at least with respect to the two renegotiated loans.

C.

The New Age loan was executed before the release of Rose McFarland's guaranty and was not renegotiated, so the release is not a part of the loan documents of that loan. However, it is well established that § 1823 does not apply to every inquiry concerning an asset. *FDIC v. Merchants Nat'l Bank of Mobile,* 725 F.2d 634, 639 (11th Cir.1984), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). The "no asset" exception to *D'Oench, Duhme* and § 1823(e) is widely recognized. *See, e.g., FDIC v. Zook Bros. Constr. Co.,* 973 F.2d 1448, 1452 (9th Cir.1992); *Commerce Federal Savings Bank v. FDIC,* 872 F.2d at 1244; *Beighley v. FDIC,* 868 F.2d 776; *FDIC v. P.L.M. International, Inc.,* 834 F.2d 248 (1st Cir.1987); *Howell v. Continental Credit Corp.,* 655 F.2d 743; *cf. Langley,* 484 U.S. at 93-94, 108 S.Ct. at 399 (implying that where the instrument is rendered void rather than merely voidable before being acquired by the FDIC, the instrument is not an asset protected by § 1823(e)). The "no asset" exception is generally defined as precluding the application of 1823(e) where "the parties contend that no asset exists or an asset is invalid and that such invalidity is caused by acts independent of any understanding or

8

side agreement." *FDIC v. Merchants Nat'l Bank,* 725 F.2d at 639 (quoted in *FDIC v. Blue Rock Shopping Center,* 766 F.2d 744, 753 (3rd Cir.1985); and *FDIC v. Nemecek,* 641 F.Supp. 740, 742 (D.Kan.1986)).

The "no asset" exception has been applied in a variety of circumstances. It has been applied by courts in cases where it has been determined that the asset was invalid for fraud, *see Gunter v. Hutcheson,* 674 F.2d 862, 867 (11th Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), or for the breach of bilateral obligations contained in the asset, *see Howell,* 655 F.2d at 746-48. Additionally, the exception has been applied where the asset had been voided by the judgment of a court prior to the date that the FDIC acquired the assets of the bank, *see Grubb v. FDIC,* 868 F.2d 1151 (10th Cir.1989), and where the asset had been discharged by the payment and cancellation of the underlying debt before the FDIC obtained the assets of the bank, *see FDIC v. Bracero & Rivera, Inc.,* 895 F.2d 824 (1st Cir.1990); *Commerce Federal Savings Bank v. FDIC,* 872 F.2d at 1245; and *FDIC v. Prann,* 694 F.Supp. 1027 (D.Puerto Rico 1988). The exception has also been invoked where, prior to the FDIC acquiring the bank's assets, the asset was extinguished by the bank's failure to comply with state law notice requirements for the sale of collateral. *FDIC v. Percival,* 752 F.Supp. 313 (D.Neb.1990) (guaranty obligation was extinguished prior to the FDIC acquiring the underlying notes when the bank violated Neb.U.C.C. § 9-504(3) by selling other collateral without notice to the guarantor).

The "no asset" exception will not, however, be applied where the agreement is not reflected in the official records of the bank. An overriding concern of § 1823 and *D'Oench* is that FDIC be able to rely on the official records of the bank. Therefore, when a defendant seeks to apply the "no asset" exception based on an unrecorded agreement, the exception will not apply. "Congress did not intend that Sec. 1823(e) be avoided in this manner; [defendant's] construction would drain substantial vitality from Sec. 1823(e) ... by throwing into question the very records of the bank that the statute entitles the FDIC to consider and rely upon." *FDIC v. Merchants Nat'l Bank,* 725 F.2d at 639 (quoted in *P.L.M. International,* 834 F.2d 248); *but see FDIC v. Nemecek,* 641 F.Supp. 740, 742-43 (holding § 1823(e) inapplicable even though accord and satisfaction apparently was not in writing or in the bank's files).

FDIC cites numerous opinions of this and other circuits holding that a release of an obligation must conform to the requirements of 1823(e) to be enforceable against the FDIC; but these are not cases where the "no asset" exception would apply. In the cases cited by FDIC, either the agreement could not clearly be determined from the bank's records or the agreement was still executory when FDIC acquired the asset. *See RTC v. McCrory,* 951 F.2d 68 (5th Cir.1992) (agreement not continuously maintained as an official bank record); *FSLIC v. Kroenke,* 858 F.2d 1067 (5th Cir.1988) (oral agreement); *FDIC v. Hoover-Morris Enterprises,* 642 F.2d 785, 787-88 (5th Cir.1981) (unexecuted oral agreement); *FDIC v. Singh,* 977 F.2d 18 (1st Cir.1992) (release not clear from bank's

10

records); *FDIC v. Zook Bros.,* 973 F.2d at 1451 (release not in bank's official files); *FDIC v. Wright,* 942 F.2d 1089 (7th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992) (appellate court concluded release was not in bank's files, despite FDIC's concession it was); *FDIC v. Manatt,* 922 F.2d 486 (8th Cir.1991) (accord and satisfaction still executory when FDIC acquired note), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054; *FDIC v. Virginia Crossings Partnership,* 909 F.2d 306 (8th Cir.1990) (undisclosed side agreement); *FDIC v. P.L.M. Int'l, Inc.,* 834 F.2d at 253 (undisclosed side agreement); *Public Loan Co. v. FDIC,* 803 F.2d 82 (3rd Cir.1986) (oral accord & satisfaction); *FDIC v. de Jesus Valez,* 678 F.2d 371 (1st Cir.1982) (letter agreement kept in presidents safe rather than in bank's files); *but see F.D.I.C. v. Krause,* 904 F.2d 463 (8th Cir.1990) (holding defense based on accord and satisfaction not noted on the promissory note or in the board's minutes barred by § 1823(e) without stating whether agreement clearly reflected in bank's official records).[2]

Under the circumstances of this case, Rose McFarland should not be precluded from availing herself of the "no asset" exception to § 1823(e). Rose McFarland's guaranty was not listed as collateral on the note and it was never mentioned in the minutes of either loan committee in connection with the New Age loan. The

---

[2]FDIC also cited *FDIC v. Cremora Co.,* 832 F.2d 959, 962 (6th Cir.1987), which held that a partnership agreement not meeting requirements of § 1823(e) was not effective against FDIC. Its relevance to the "no asset" exception is elusive.

guaranty could only be connected to the New Age loan after it was discovered in a search of the bank's official files. That same search would reveal that the guaranty had been released. Under these circumstances, there is no "understanding or side agreement" of the type that could have caused the FDIC to be misled. We therefore hold that the "no asset" exception to § 1823(e) and *D'Oench, Duhme* applies in this case, reverse the decision of the district court, and hold that the release of Rose McFarland's guaranty is effective against the FDIC.[3]

## II. THE LEASE

### A.

Two of the notes that were described above were secured by a mortgage on "State Lease 340." The mortgage was granted in 1984. That lease describes the covered property as "all of the property ... belonging to the State of Louisiana." The southern or seaward boundary of the lease is described as "the extreme southern or seaward boundary of ... Louisiana."

When the lease was granted by the State of Louisiana in 1936, it was the State's position that its seaward boundary extended three leagues (about nine miles) from shore. In 1950 the Supreme

---

[3]Rose McFarland argued that the district court's findings that the release was not executed in conformance with § 1823(e) and that board approval was not reflected in the minutes were clearly erroneous; that 1991 amendments to § 1823(e) could not be applied retroactively to allow FDIC in its capacity as receiver protection under § 1823(e); and that the district court failed to give proper weight to the FDIC's statements in another case that Rose McFarland's guaranty had been released. Because we have determined that § 1823 and *D'Oench, Duhme* do not apply in this case, we need not evaluate these issues.

Court held that Louisiana's seaward boundary extended no further than its ordinary low-water mark and that the United States owned the lands and minerals underlying the Gulf in the case of *United States v. State of Louisiana,* 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216 (1950). In 1953, the Congress passed the Submerged Lands Act, 43 U.S.C. § 1301 *et seq.,* which granted states a three-mile belt offshore and the Outer Continental Lands Act, 43 U.S.C. § 1331 *et seq.,* which validated leases previously granted by states on property outside the three-mile belt. This validation resulted in the creation of a separate lease by the Department of the Interior referred to as "OCS 310".

David Jump and Premier Venture Capital Corp., judgment creditors of Rory Mcfarland, who recorded their judgments after the recordation date of the FDIC's mortgage, argue that FDIC's mortgage does not cover Rory Mcfarland's interest in OCS 310, and so does not secure Rory Mcfarland's debt to FDIC and is available to cover their judgments. The trial court agreed with Jump, et al., saying that the lease language describing the area to be covered as the Louisiana boundary must be understood as the Louisiana boundary in 1984 when the mortgage was executed. The trial court also found that the mortgage recorded by FDIC, describing the leased area as ending at the Louisiana boundary was not sufficient to put Jump, et al. as third parties on notice that OCS 310 was mortgaged. FDIC appeals.

B.

Interpretation of a contract and the determination of

13

ambiguity are questions of law, which this Court reviews de novo. *FDIC v. Brants,* 2 F.3d 147 (5th Cir.1993). Fact questions arising out of extrinsic evidence are reviewed under the clearly erroneous standard. *National Union Fire Insurance Co. v. Circle, Inc.,* 915 F.2d 986 (5th Cir.1990).

FDIC argues that we should consider extrinsic evidence admitted by the district court regarding the intentions of the parties. We disagree. The language in the mortgage unambiguously describes the property covered as ending at the Louisiana boundary. That alone decides the case. The trial court, perhaps out of an abundance of caution, looked at the extrinsic evidence and still found no basis for FDIC's claim to OCS 310, but there was no need to do so. We therefore AFFIRM the district court's holding that the notes acquired by FDIC are not secured by a mortgage on OCS 310.