## FEDERAL FINANCIAL COMPANY
## v. Dexter A. LANDERS

[740 A.2d 345]

No. 98-273

April 8, 1999. Defendant Dexter A. Landers appeals a grant of summary judgment in favor of plaintiff Federal Financial Company. Defendant maintains that a genuine issue of material fact regarding the capacity in which he co-signed an unsecured promissory note remained in dispute, and that the trial court improperly denied him an opportunity to present defenses to payment. Defendant urges that the defenses of impairment of recourse, laches, and estoppel presented material facts for resolution before a jury. We affirm.

Defendant is president of Northfield Wood Products and has, on occasion, obtained loans to finance businesses. Defendant met Rima Burton, president of Comart, Inc., through his work with the Central Vermont Development Corporation. On August 11, 1992, Comart executed the unsecured note for $25,000 at 8% interest with First National Bank of Vermont. Burton signed the note as president of Comart and individually to secure funds for a clothing business. Defendant co-signed the note. The document does not describe the capacity in which defendant signed the Comart note, but his signature appears directly under Burton's. The note matured on November 9, 1992 and, because of Comart's financial difficulties, was in default.

On January 29, 1993, the state banking commissioner declared First National insolvent and promptly closed it. On February 3, 1993, defendant, apparently unaware that the bank had failed but cognizant of Comart's financial difficulties, sent a letter to one of the bank's officers expressing interest in purchasing certain assets of Comart if the bank were to repossess those assets as a secured lender. Defendant's offer contained a condition that the bank apply $25,000 of the proposed asset purchase price to the Comart note. First National Bank was closed at that time and never replied to the letter.

The Federal Deposit Insurance Corporation (FDIC) was appointed receiver of the closed bank. On April 6, 1993, FDIC sent a letter to defendant indicating that he was wholly liable for the $25,000 plus accrued interest. Defendant responded by letter on April 19, 1993 and offered $5,000 cash to "clear all my obligations in this loan." Defendant also acknowledged that he had invested time and money in trying to keep Comart alive, but that his efforts had ultimately failed. FDIC declined defendant's offer.

Despite the notice to defendant that FDIC considered him liable on the note, defendant took no further action to resolve the debt. In November 1993, Burton filed for bankruptcy protection, and Comart dissolved. Burton was discharged

from bankruptcy in March 1994. Plaintiff, Federal Financial Co., acquired the Comart note from FDIC in 1995 and sent a demand letter to defendant on February 13, 1995. Defendant failed to pay the debt, and plaintiff sued.

Defendant's principal defense was that plaintiff's unreasonable delay in pursuing payment from Comart and Burton made it impossible to collect from them and deprived him of the opportunity to be reimbursed by them. Defendant also raised equitable estoppel and laches defenses.

Our standard for reviewing a grant of summary judgment is the same as the trial court. See *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). "Summary judgment should be granted when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*

Defendant's primary contention here is that he signed the note as an accommodation indorser, and as such, he acted as merely a surety rather than as a principal maker of the note. He relies on the fact that his signature appears directly below Burton's and that, while her signature line carries the designation "BY," nothing precedes his own. Defendant argues that, since his signature was rendered in an ambiguous capacity, he can be held liable only as an accommodation indorser, rather than as a fully-liable maker of the note.

An accommodation party to an instrument is "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." 9A V.S.A. § 3-415(1), repealed by 1993, No. 158 (Adj. Sess.), § 11. An accommodation maker differs from an accommodation indorser in that the former "is bound on the instrument without any resort to his principal" while the latter "may be liable only after presentment, notice of dis-

honor, and protest." *Id.* comment 1; see also *Kokoletsos v. Frank Babcock & Son, Inc.*, 149 Vt. 33, 37, 538 A.2d 178, 180-81 (1987) (accommodation makers bound on instrument without resort to principal).

The trial court assumed that defendant signed the note as an accommodation indorser for purposes of summary judgment and addressed his impairment of recourse defense. Because we find no ambiguity in the capacity in which defendant signed the Comart note and find him liable as an accommodation maker, summary judgment was correct in any event. The terms of the note on its face are clear. The language that appears directly above the signature block in capital script states succinctly "Notice to Co-Signer: Your signature on this note means that you are equally liable for repayment of this loan. If the borrower does not pay, the lender has a legal right to collect from you." Furthermore, 9A V.S.A. § 3-118(e), repealed by 1993, No. 158 (Adj. Sess.), § 11 provides that "[u]nless the instrument otherwise specifies two or more persons who sign [the instrument] as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable." The note at issue does not specify that defendant signed only as an accommodation indorser or that he retained any rights as a surety. Given the clarity of the language on the note, we cannot hold that any ambiguity existed to entitle him to the surety defenses raised. Defendant is wholly liable for payment because on the face of the note he signed as a maker and as such he "engaged to pay the note according to its tenor." *Alexander v. Chevalier*, 98 Vt. 230, 234, 126 A. 498, 499 (1924) (construing prior statute); see also *Bissonnette v. Wylie*, 162 Vt. 598, 605, 654 A.2d 333, 338 (1994) (*Bissonnette I*) (holding surety defenses discharge co-maker if creditor has actual knowledge that co-maker has changed relationship to that of surety and unjustifiably impairs collateral).

*Affirmed.*