## Cadle Company v. Barbara Patoine

[772 A.2d 544]

No. 00-209

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed April 13, 2001

*Thomas R. Paul* of *Paul and Paul,* St. Johnsbury, for Plaintiff-Appellee.

*Robert A. Gensburg,* St. Johnsbury, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Barbara Patoine, a co-signer on a defaulted promissory note purchased by plaintiff Cadle Company from the Federal Deposit Insurance Corporation (FDIC), appeals the superior court's summary judgment ruling refusing to apply any of her asserted defenses against plaintiff. We reverse.

In August 1991, Wayne Kimball obtained a $40,000 construction loan from Caledonia National Bank. Defendant co-signed the loan as an accommodation maker and thus was equally liable for its payment upon default. See 9A V.S.A. § 3-419(b); *Federal Fin. Co. v. Landers,* 169 Vt. 570, 571, 740 A.2d 345, 346 (1999) (mem.). Kimball died less than two months before the note became due. His estate did not have the funds to satisfy the note. In January 1993, five months after the note became due, the bank gave the estate a written extension of time until July 1, 1993 to pay the debt. The bank did not obtain defendant's consent to the agreement. Nor did the agreement contain a reservation of rights against defendant.

Eventually, the bank foreclosed on the real estate that served as collateral for the loan. Following sale of the real estate, a deficiency remained. The bank became insolvent in 1994, was placed in

receivership and taken over by the FDIC, and was eventually liquidated. Plaintiff later purchased the disputed note from the FDIC. When defendant declined to pay, plaintiff sued defendant to obtain the deficiency, which was approximately $21,000 in principal. Defendant claimed that her liability on the note was discharged because the bank had unjustifiably impaired the collateral and had given Kimball's estate a six-month extension of time to pay the note without obtaining her consent or reserving its rights against her in writing. See 9A V.S.A. § 3-606(1)(a)-(b) (repealed effective January 1, 1995).*

The superior court granted summary judgment to plaintiff. Regarding the impairment-of-collateral defense, *id.* § 3-606(1)(b), the court ruled that defendant had failed to meet her burden to demonstrate either the fact of unjustifiable impairment or the extent of any such impairment. As for defendant's contention that the extension agreement discharged her liability on the note, the court ruled that § 3-606(1)(a) could not be asserted against plaintiff because it had purchased the note from the FDIC and thus was entitled to holder-in-due-course status, which immunized it from the statute.

Because our resolution of the issues surrounding the extension agreement is controlling, we need not address defendant's impairment-of-collateral claim. On appeal, plaintiff concedes that (1) § 3-606(1)(a) was the governing law at all times material to this action; (2) application of that provision discharged defendant's liability on the note in question as to all except holders in due course; and (3) neither the FDIC nor any subsequent purchaser, including plaintiff, was or is a holder in due course under Vermont state law, 9A V.S.A. § 3-302(c), because the FDIC purchased the note as part of a bulk transaction not in the ordinary course of the transferor's business. For her part, defendant concedes on appeal that if the FDIC was a holder in due course under federal law, then plaintiff, as a subsequent purchaser of the note, is a holder in due course, and the discharge under § 3-606(1) was not effective against plaintiff. See *id.* § 3-601(b) (former § 3-602) (discharge of obligation of party is not effective against person acquiring rights of holder in due course of instrument without notice of discharge).

---

* Section 3-606 of the Uniform Commercial Code was repealed effective January 1, 1995 and replaced by § 3-605. The parties agree that former § 3-606 was in effect at all material times to this action and is the governing law in the case at bar. Accordingly, we will refer to the repealed section throughout the opinion.

Therefore, the issue on appeal is whether the FDIC was entitled to holder-in-due-course status under federal law, notwithstanding its lack of that status under Vermont law. Defendant argues that neither the relevant federal statute, nor any federal common law, provided the FDIC or plaintiff with holder-in-due-course status under the facts of this case. We agree.

Most courts and commentators agree that the relevant federal statute, 12 U.S.C. § 1823(e), is a codification of the federal common law holding in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942). See, e.g., *FDIC v. Newhart*, 892 F.2d 47, 49 (8th Cir. 1989); 2 J. White & R. Summers, Uniform Commercial Code § 17-13, at 202 (4th ed. 1995). In *D'Oench*, the obligor sold the bank certain bonds that were in default. To allow the bank to avoid showing the defaulted bonds on its books, the obligor executed notes to the bank, with the secret understanding that the notes would never be repaid. After the FDIC acquired the notes, it sued for payment. The Court held that the obligor was estopped from denying its liability under the notes. *D'Oench*, 315 U.S. at 461-62.

In relevant part, § 1823(e) provides that no agreement tending to defeat the interest of the FDIC in any "asset" acquired by it shall be valid unless the agreement was in writing, was properly executed and approved, and was part of the bank's official records. "By its terms, the statute protects the FDIC from unwritten agreements that otherwise might be asserted to diminish or defeat its rights in assets acquired from a failed bank." *FDIC v. Leach*, 772 F.2d 1262, 1267 (6th Cir. 1985). Neither *D'Oench* nor § 1823(e) appears to apply to the instant agreement, which was neither secret nor undocumented. See *First Heights Bank, FSB v. Gutierrez*, 852 S.W.2d 596, 607 (Tex. App. 1993); *Alaska S. Partners v. Prosser*, 972 P.2d 161, 164 (Alaska 1999).

In any event, the situation here fits within the so-called "no-asset exception" to *D'Oench* and § 1823(e). *FDIC v. McFarland*, 33 F.3d 532, 537 (5th Cir. 1994). That exception precludes the application of *D'Oench* or § 1823 when no asset actually existed at the time it was acquired by the FDIC. *Id.*; see *Prosser*, 972 P.2d at 165 (no-asset exception is widely recognized). This exception has been invoked where, before the FDIC acquired the bank's assets, the asset at issue was extinguished by the bank's failure to comply with state law notice requirements for the sale of collateral. *FDIC v. Percival*, 752 F. Supp. 313, 317, 319-20 (D. Neb. 1990). The situation in this case is highly analogous to that in *Percival*, regardless of whether the statutory discharge is labeled a personal or real defense. Accordingly, we

conclude that federal law did not preclude § 3-606(1)(a) from discharging defendant's liability on the note in question.

Plaintiff argues that defendant has waived any reliance on the no-asset exception because it was not raised before the superior court. While it is true that defendant did not specifically identify the exception or cite case law to support it, she did contend that discharge under § 3-606(1)(a) was not precluded by § 1823(e), and she asked the court to examine § 1823(e), rather than federal common law, to determine whether federal or state law applied. Under these circumstances, we find no waiver. In any event, as noted, plaintiff has failed to demonstrate that any one of the criteria set forth in § 1823(e) was not met.

Rather, in claiming holder-in-due-course status for the FDIC and itself, plaintiff relies primarily on federal case law that has gone beyond the holding of *D'Oench* and given the FDIC a super holder-in-due-course status beyond that permitted under state law adopting the Uniform Commercial Code. See 2 White & Summers, *supra*, at 203-05 (discussing expanded federal holder-in-due-course doctrine). We reject plaintiff's reliance on federal common law creating a federal holder-in-due-course doctrine because most federal and state courts agree that the United States Supreme Court has recently rejected supplementing federal statutory law with federal common law to determine whether federal or state law governs holder-in-due-course status. See *FDIC v. Deglau*, 207 F.3d 153, 170-71 (3d Cir. 2000) (citing and joining federal circuit courts concluding that federal common law expanding upon *D'Oench* doctrine is no longer viable, given recent United States Supreme Court decisions; § 1823(e) is comprehensive and need not be supplemented by federal common law); *FDIC v. Houde*, 90 F.3d 600, 604 (1st Cir. 1996) (Supreme Court has recently held that matters left unaddressed by federal statutory law are controlled by state law); *DiVall Insured Income v. Boatmen's First Nat'l Bank*, 69 F.3d 1398, 1402 (8th Cir. 1995) (federal common law doctrine and federal holder-in-due-course doctrine are no longer viable under recent Supreme Court case law); see also *Sun NLF Ltd. P'ship v. Sasso*, 713 A.2d 538, 545 (N.J. Super. Ct. App. Div. 1998) (stating that it was "constrained to reject" federal holder-in-due-course doctrine, given recent pronouncements by United States Supreme Court and other federal courts); *R.I. Depositors Econ. Protection v. Ryan*, 697 A.2d 1087, 1093 n.4 (R.I. 1997) (noting that federal holder-in-due-course doctrine based on federal common law was in doubt after recent Supreme Court

cases, but concluding that such doctrine would be applied in that case under state law).

Because plaintiff has conceded that it is not a holder in due course under state law, and because the no-asset exception precludes federal law from negating the effect of the extension agreement under § 3-606(1)(a), the latter provision discharged defendant's liability, and thus plaintiff may not look to defendant to collect the deficiency stemming from the note it purchased from the FDIC.

*Reversed.*