**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 18, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CADLEROCK III, LLC, an Ohio limited
liability company,

    Plaintiff - Appellant,

v.

DUSTIN WHEELER,

    Defendant - Appellee.

No. 18-6171
(D.C. No. 5:16-CV-01071-F)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

The Supreme Court's decision in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S.

447 (1942), and its statutory counterpart, 12 U.S.C. § 1823(e), bar certain defenses

against claims by the Federal Deposit Insurance Corporation (FDIC) and its

transferees.  Cadlerock III, LLC, an FDIC transferee, sued Dustin Wheeler to enforce

his personal guarantees of certain loans issued by The Bank of Union (the Bank)

before it failed and its assets were acquired by the FDIC.  Following a bench trial, the

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

district court held that *D'Oench* and § 1823(e) do not apply to Wheeler's defense that the Bank had agreed to release his guarantees. The court therefore entered judgment in Wheeler's favor on Cadlerock's claim. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's judgment and remand for entry of judgment in favor of Cadlerock.

## I.      Background[1]

During their marriage, Dustin Wheeler and his former wife, Shana Wheeler, owned two businesses: a Chevrolet dealership (Wheeler Chevrolet) and a mobile home rental and sales business (Wheeler Rental). From 2007 to 2012, Wheeler Rental borrowed millions of dollars from the Bank. On behalf of Wheeler Rental, Dustin and Shana executed multiple promissory notes in connection with these loans. In August and September 2007, Dustin also signed two personal guarantees of Wheeler Rental's indebtedness to the Bank (Guarantees).

Dustin and Shana divorced in 2011. Their divorce decree, which incorporated a settlement agreement, allocated Wheeler Chevrolet and its associated debts to Dustin, and Wheeler Rental and its associated debts to Shana. The divorce decree also provided that the proceeds from the sale of the marital residence would be used to pay down specified debts. After their divorce, all promissory notes on behalf of

---

[1] We recite the facts as found by the district court in its Amended Findings of Fact and Conclusions of Law following the bench trial. Cadlerock does not contend that any of the district court's factual findings is clearly erroneous.

2

Wheeler Rental were executed only by Shana. Shana also signed new guarantees of the Wheeler Rental loans; Dustin did not.

When the Bank failed in January 2014, the FDIC was appointed as receiver. At that time, Dustin's Guarantees of the Wheeler Rental debt remained in the Bank's records. Although the Bank's files did not contain any explicit agreement releasing the Guarantees, its records included the following documents: the Wheelers' divorce decree; four post-divorce promissory notes signed only by Shana on behalf of Wheeler Rental; six post-divorce guarantees of Wheeler Rental's debt, also signed only by Shana; two Loan Officer Memos summarizing Wheeler Rental's debt that listed Shana as the sole guarantor; and other internal memoranda and letters from the Bank related to Wheeler Rental's debt that referenced only Shana.

The FDIC sold the Wheeler Rental promissory notes, as well as other security instruments, mortgages, and guaranty agreements, to Cadlerock's affiliate, who assigned those assets to Cadlerock. Cadlerock obtained a default judgment in state court against Wheeler Rental in excess of $5 million. Cadlerock then filed this action against Wheeler in the district court to collect on its judgment by enforcing his Guarantees of the Wheeler Rental debt.

Wheeler asserted four defenses, only two of which are pertinent to this appeal. He contended that his signature on the September 2007 Guaranty was forged. The court held against Wheeler on that issue, *see* Aplt. App., Vol. I at 274-75, and he has not appealed that ruling. Wheeler also argued that the Bank had released him from his Guarantees of the Wheeler Rental debt before the Bank failed. Following a bench

3

trial, the district court held in favor of Wheeler on that defense. In doing so, the court held that the so-called "no asset" exception to § 1823(e) applied in this case, allowing Wheeler to assert his release defense without satisfying the requirements of that section. Alternatively, the court held that the release agreement asserted by Wheeler in defense of Cadlerock's claim satisfied the requirements of *D'Oench* and § 1823(e) and was therefore enforceable against Cadlerock. On appeal, Cadlerock argues that the district court erred as a matter of law in both of these rulings.[2]

## II.    Discussion

The resolution of this appeal turns on the application of *D'Oench* and § 1823(e) to the facts found by the district court after a bench trial. We review the court's application of the law de novo. *San Juan Cty. v. United States*, 754 F.3d 787, 796 (10th Cir. 2014).

### A.    The *D'Oench* Doctrine and § 1823(e)

*D'Oench* held that debtors obligated to a failed bank could not assert a side agreement with the bank as a defense against the FDIC's efforts to collect on the debtors' notes. *See Castleglen, Inc. v. Resolution Tr. Corp.*, 984 F.2d 1571, 1575-76 (10th Cir. 1993). "The Court held that federal policy evinced by provisions of the Federal Reserve Act barred the assertion of the secret agreement by one responsible

---

[2] Wheeler raised two other defenses in the district court: (1) his liability for Wheeler Rental's debt was extinguished by his settlement agreement with the FDIC regarding Wheeler Chevrolet's debt, and (2) enforcement of his August 2007 Guaranty was barred by the statute of limitations. The court rejected both of these defenses, *see* Aplt. App., Vol. I at 276-77; *id.* at 278 n.15, and Wheeler has not appealed these rulings.

for creation of the false status of the note in the hands of the bank." *Id.* *D'Oench*'s holding was codified in 12 U.S.C. § 1823(e). *See Castleglen*, 984 F.2d at 1576. That section provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).[3]

Notably, "[a]s the doctrine has evolved, its focus has shifted from the fraudulent, illegal, or secret character of the debtor's acts to the effect the acts have on the regulatory agency's ability to evaluate quickly and accurately a savings institution's assets." *Castleglen*, 984 F.2d at 1576. "Bank examiners must often conduct these evaluations and decide the course of the bank's fate overnight." *FDIC v. Noel*, 177 F.3d 911, 918 (10th Cir. 1999). "Neither the FDIC nor state banking

---

[3] For the purposes of this case, the reach of the statute and *D'Oench* are coextensive. *See Castleglen*, 984 F.2d at 1576 (noting *D'Oench* and § 1823(e) are "usually . . . construed in tandem").

authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Langley v. FDIC*, 484 U.S. 86, 91-92 (1987). Thus, one purpose of *D'Oench* and § 1823(e) is to allow regulators to rely on an asset's face value. *Castleglen*, 984 F.2d at 1577. And the protections of the doctrine extend, as well, to third party transferees from the FDIC. *See id.*

"The purpose of the doctrine is certainty," and the statutory requirements for a valid side agreement are "'categorical.'" *Id.* at 1579 (quoting *Langley*, 484 U.S. at 95). Therefore, "[s]cattered evidence in corporate records from which one could infer the existence of an agreement does not meet the requirements of the statute." *Id.* (citing decisions rejecting as insufficient to satisfy the statute: (1) suggestive evidence in a bank's records, (2) documents from which an inference of an agreement could be drawn, and (3) agreements implicit in record documents but apparent only to someone familiar with the negotiations).

## B. The "No Asset" Exception to § 1823(e)

Courts have recognized that "[§] 1823(e) does not apply to every inquiry concerning an asset." *FDIC v. Merch. Nat'l Bank of Mobile*, 725 F.2d 634, 639 (11th Cir. 1984). *Merchants National Bank* identified the following circumstances, commonly referred to as the "no asset" exception, where the statute does not apply:

> It does not apply when the court determines if an asset is invalid for fraud, or for breach of bilateral obligations contained in the asset. In such cases the parties contend that no asset exists or an asset is invalid *and* that such invalidity is caused by acts independent of any understanding or side agreement.

*Id.* (citations omitted). We and our sister circuits have consistently cited this language in *Merchants National Bank* to define the contours of the no asset exception. *See, e.g.*, *Grubb v. FDIC*, 868 F.2d 1151, 1158-59 (10th Cir. 1989). *Merchants National Bank* ultimately held that the exception it recognized did not apply in that case, where a party sought to resolve an asserted ambiguity in a failed bank's records with extrinsic evidence, including the "intent of the parties, knowledge by FDIC, and surrounding circumstances," that did not meet § 1823(e)'s requirements. 725 F.2d at 637, 639. The court reasoned that "Congress did not intend that Sec. 1823(e) be avoided in this manner; [such a] construction would drain substantial vitality from Sec. 1823(e), as applied to this case, by throwing into question the very records of the bank that the statute entitles FDIC to consider and rely upon." *Id.* at 639.

Later, in *Langley*, the Supreme Court observed that the presence of fraud could be relevant to § 1823(e)'s requirement that the agreement in question tends to diminish the "interest" of the FDIC in an "asset." 484 U.S. at 93 (internal quotation marks omitted). The Court held that "the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents—would take the instrument out of § 1823(e), because it would render the instrument entirely void, thus leaving no right, title or interest that could be diminished or defeated." *Id.* at 93-94 (citations, brackets, and internal quotation marks omitted). But the court did not apply such an exception to § 1823(e)

7

in *Langley* because the facts there supported only fraud in the inducement, and voidable title in an asset is an "interest" transferrable to the FDIC. *Id.* at 94.

This court applied the no asset exception where promissory notes had already been voided by a district court judgment when a bank failed and the FDIC stepped in as receiver. *Grubb*, 868 F.2d at 1158-59. We held that, due to the preexisting judgment, "the FDIC acquired no right, title or interest in the . . . notes that the fraud claims and defenses could diminish or defeat, and section 1823(e) does not bar those claims and defenses." *Id.* at 1158 (internal quotation marks omitted). We reasoned that, "because a judgment already existed when the FDIC purchased [the bank's] assets, the purposes of section 1823(e) [were] not vitiated. The judgment provided the FDIC a reliable record indicating that the notes were void . . . ." *Id.* at 1159. In support of our holding in *Grubb*, we cited both *Langley* and *Merchants National Bank*. *Id.* at 1158-59.

### C. *D'Oench* and § 1823(e) Bar Wheeler's Release Defense

We hold that the *D'Oench* doctrine and § 1823(e) apply to Wheeler's release defense and bar him from asserting it against Cadlerock, as the FDIC's transferee.

### 1. The Agreement Releasing Wheeler's Guarantees Does Not Satisfy the Requirements of § 1823(e)

Wheeler's defense against Cadlerock's claim is based on an agreement by the Bank to release his Guarantees of the Wheeler Rental debt. Because such an "agreement" would tend to diminish or defeat the FDIC's interest in "assets," namely Wheeler's Guarantees, it must satisfy the requirements of § 1823(e). Among other

8

conditions, the agreement must be in writing, it must be executed by both the Bank and Wheeler, and it must have been an official record of the Bank continuously since its execution. *See* 12 U.S.C. § 1823(e)(1)(A), (B), (D).

When the FDIC acquired the Bank's assets, the Bank's records did not contain an explicit written release of Wheeler's Guarantees. The district court nonetheless characterized the evidence of a release agreement as "clear and convincing," even "overwhelming." Aplt. App., Vol. I at 272 & n.9. In addition to documents in the Bank's records, the court cited a great deal of testimony from the trial. But it also pointed separately to certain documents that the FDIC received when the Bank failed, which it stated were "easily sufficient" to establish that Wheeler was not a guarantor of Wheeler Rental's debt. *Id.* at 273.

These documents included the Wheelers' divorce decree incorporating their settlement agreement;[4] four post-divorce promissory notes signed only by Shana on behalf of Wheeler Rental; six post-divorce guarantees of Wheeler Rental's debt, also signed only by Shana; two Loan Officer Memos summarizing Wheeler Rental's debt that listed Shana as the sole guarantor; and other internal memoranda and letters from the Bank related to Wheeler Rental's debt that referenced only Shana.

---

[4] The district court took pains to emphasize that the terms of the Wheelers' divorce decree did not extinguish their obligations to third party creditors, including the Bank. Rather, the court found, based upon the testimony at trial, that the Bank was involved in implementing the division of the couple's debt as contemplated by their divorce decree.

The district court acknowledged there was no single document in the Bank's records reflecting the Bank's agreement to release Wheeler from his Guarantees of the Wheeler Rental debt. But the court held, citing another Circuit's decisions, that a collection of documents in the Bank's files could reflect such an agreement. Cadlerock disputes that point, but we need not decide the question because the collection of documents relied on by the district court fails to establish the existence of a release agreement with the certainty required by § 1823(e). *See Castleglen*, 984 F.2d at 1579 ("The purpose of the doctrine is certainty and an inference of an alleged agreement does not meet the requirements of § 1823(e)." (internal quotation marks omitted)); *Noel*, 177 F.3d at 918 ("[T]he FDIC has no duty to scour a failed institution's documents for inferences . . . supporting defenses . . . that might prevent the FDIC from collecting the full value of an otherwise facially valid instrument."). At best, the district court pointed to suggestive evidence in the Bank's records that would have required the FDIC to infer the existence of an agreement. Consequently, because Wheeler's asserted release agreement fails to satisfy § 1823(e), the statute bars him from raising that agreement in defense of Cadlerock's claim to enforce his Guarantees. That is, unless an exception to § 1823(e) applies in this case.

### 2. The No Asset Exception Does Not Apply to Wheeler's Release Defense

The district court held that *D'Oench* and § 1823(e) are inapplicable to Wheeler's release defense because the Bank agreed to release him from his Guarantees before it failed; therefore, applying the no asset exception, the court held

that the "assets" in question—Wheeler's Guarantees—did not exist when the FDIC acquired the Bank's assets. Cadlerock asserts that the district court erred in applying the no asset exception under the circumstances in this case.

While the no asset exception is widely recognized, it has not been consistently applied, as demonstrated by the conflicting cases the parties cite on appeal. Citing *Merchants National Bank*, Cadlerock construes the exception as applying in only two scenarios: where the parties contend (1) that "no asset exists," or (2) that "an asset is invalid *and* that such invalidity is caused by acts independent of any understanding or side agreement." 725 F.2d at 639. Cadlerock asserts that our decision in *Grubb* is an example of the first scenario because the notes in that case had already been voided by a court judgment when the FDIC acquired the failed bank's assets. Cadlerock maintains that this first category applies only to a defense asserting that an asset is void *ab initio*, as discussed in *Langley*, 484 U.S. at 93-94. Wheeler does not claim on appeal that his Guarantees are void.[5]

As to the second scenario, Cadlerock points to *Howell v. Continental Credit Corp.*, 655 F.2d 743 (7th Cir. 1981). *Merchants National Bank* cited *Howell* as an example of circumstances where § 1823(e) does not apply, in particular "when the court determines if an asset is invalid . . . for breach of bilateral obligations contained in the asset," 725 F.2d at 639 (citation omitted). *Howell* held that *D'Oench* and

---

[5] As noted, Wheeler did not appeal the district court's adverse ruling on his defense that his signature on the September 2007 Guaranty was forged. Consequently, there is no basis for this court to conclude that fraud in the factum rendered that Guaranty void taking it out of § 1823(e), per *Langley*.

11

§ 1823(e) did not bar a lessee from asserting a defense that leases acquired by the FDIC were invalid due to inadequate consideration. 655 F.2d at 745-47. The court observed that the very documents the FDIC sought to enforce—the leases—facially manifested bilateral obligations and were the basis of the lessee's defense, as opposed to a defense that was based upon a side agreement. *Id.* at 746-47. Cadlerock notes that, unlike the lessee in *Howell*, Wheeler does not assert that his Guarantees are invalid due to a breach of bilateral obligations contained in the Guarantees.

Cadlerock cites additional authorities supporting its narrow construction of the no asset exception. In *FDIC v. P.L.M. International, Inc.*, 834 F.2d 248, 253 (1st Cir. 1987), guarantors argued that § 1823(e) did not apply because their guarantees ceased to exist before the FDIC acquired a failed bank's assets. But the court construed *Merchants National Bank* as permitting the use of documents that do not meet the requirements of § 1823(e)—i.e., "nonconforming evidence"—only to prove that an asset never existed due to fraud at the outset, as distinguished from "cases where the parties contend[] that a side agreement control[s] the rights of the parties." *Id.* Thus, *P.L.M.* held the exception was inapplicable in that case because the guarantors sought "to avoid liability under the guaranty agreement by asserting the validity of a nonconforming release: a side agreement of which the FDIC had no knowledge until seven months after its acquisition of the principal asset." *Id.* at 254.

In *FDIC v. Zook Bros. Construction Co.*, 973 F.2d 1448, 1451 (9th Cir. 1992), a guarantor argued that *D'Oench* and § 1823(e) did not apply because a novation had

12

occurred before the FDIC took over the bank.  After citing the *Merchants National Bank* formulation, the court noted the FDIC's position—consistent with that decision—that the no asset exception is "limited to instruments which are invalid for fraud or breach of obligations in the asset itself."  *Id.* at 1453.  The court did not find either of these circumstances in *Zook Bros.*  Rather, it held that the guarantor's novation defense "depend[ed] on proving an implied agreement between [the guarantor] and [the bank] that is belied by the presence of the . . . guaranty in the Bank's file."  *Id.* at 1452.  The no asset exception therefore did not apply, because the evidence supporting a novation failed to comply with § 1823(e).  *Id.* at 1453 ("Zook . . . seeks to avoid federal law by asserting the validity of an implied side agreement to extinguish her guaranty, although no document in the bank's file says that it is terminated.").

Notably, the documents supporting the guarantor's novation defense in *Zook Bros.* resembled the type of evidence the district court relied upon in this case to hold that the Bank agreed to release Wheeler's Guarantees.  The guarantor in *Zook Bros.* pointed to a new loan consolidation agreement and her husband's written affirmation of his previous guarantees—both of which were in the bank's files—as well as the *absence* of such a new affirmation document signed by her.  *Id.* at 1450.

For his part, Wheeler contends that the district court properly relied on *FDIC v. McFarland*, 33 F.3d 532 (5th Cir. 1994), in holding that the no asset exception applies to his release defense.  After quoting the *Merchants National Bank* formulation of the exception, *id.* at 537, *McFarland* held that it "will not . . . be

13

applied where the agreement is not reflected in the official records of the bank," *id.* at 538. Applying this requirement, the court allowed a guarantor to assert a release defense against the FDIC based upon a letter in a failed bank's records stating the bank's agreement to release her guaranty. *Id.* at 538-39. That letter, which was separate from the guaranty that the FDIC sought to enforce, did not otherwise comply with the requirements of § 1823(e). *Id.* at 536 (noting the letter was not executed by the guarantor and was not reflected in the loan committee's minutes). *McFarland* nonetheless held that "there [was] no 'understanding or side agreement' of the type that could have caused the FDIC to be misled." *Id.* at 539 (quoting *Merch. Nat'l Bank*, 725 F.2d at 639). Thus, under *McFarland*, a debtor can assert defenses against the FDIC—such as discharge, novation, or accord and satisfaction—that are based on a side agreement, so long as that agreement is found in the failed bank's records and is clearly determinable therefrom. *See id.* at 538.

Addressing Cadlerock's authorities, Wheeler contends they do not *mandate* a reversal of the district court's decision, and that nothing in *Grubb* indicates that this court intended to limit the no asset exception to the facts in that case. But Wheeler does not provide us with any reason, much less a persuasive one, to extend that exception as broadly as its application in *McFarland*. We decline to do so.

As we construe the reasoning and holding in *McFarland*, that decision placed insufficient focus on the effect of the debtor's acts upon the FDIC's ability to evaluate quickly and accurately a failed bank's assets, *see Castleglen*, 984 F.2d at 1576. To that end, "Congress opted for the certainty of the requirements set forth in

14

§ 1823(e)." *Langley*, 484 U.S. at 95. Therefore, we will tread carefully in recognizing any exception to those requirements.

Cadlerock's narrow construction of the no asset exception—limiting it to defenses (1) asserting an asset is void, or (2) asserting an asset is invalid due to a breach of bilateral obligations contained in the asset itself—is consistent with both *Langley*, 484 U.S. at 93-94, and the decisions cited in *Merchants National Bank*, 725 F.2d at 639. It is also in keeping with the text and the purposes of § 1823(e). In the first category of the exception—where an asset is void *ab initio*—§ 1823(e) does not apply because the FDIC never took title to an "asset." And the second category preserves the FDIC's ability to rely on the bank's records in evaluating the worth of its assets because the "asset," and the "agreement" that "tends to diminish" it, are one and the same.

Moreover, we emphasize that the extent to which the district court relied on oral testimony in applying an exception to § 1823(e) in this case is entirely at odds with the purposes of the statute. As we have held, the FDIC, and any subsequent purchaser, are not required to piece together an agreement affecting the face value of an asset by drawing inferences from various documents in a failed bank's records. *See Castleglen*, 984 F.2d at 1579. Here, any inference of a release agreement that might have been drawn from the Bank's records required the extensive background, explanation, and context supplied by the testimony at trial.

For example, the district court cited—and characterized as "important to understand," Aplt. App., Vol. I at 259—testimony regarding the different Bank

15

officers who were responsible for the Wheelers' loans over time, *id.* at 259-61. Again pointing to oral testimony, the court stated it was necessary to understand the Bank's "procedures with respect to guaranty paperwork," to discern "where Dustin Wheeler stood with the bank in the wake of the . . . divorce." *Id.* at 261. While acknowledging that the Wheelers' divorce decree did not bind the Bank, the court cited testimony regarding the Bank's understanding of those documents, its intent to separate the couple's debts in accordance with them, and the Bank's role in doing so. *Id.* at 262 & n.6. And as to the terms of the agreement underlying Wheeler's defense, which the court characterized as "a fully performed bilateral agreement," *id.* at 284, it cited testimony that the Bank agreed to release Wheeler's Guarantees in exchange for the Wheelers' pay down of certain loans using the proceeds from the sale of the marital residence, *id.* at 263-64. This latter issue was supported *only* by testimony at the trial. *See id.* at 263-64; *see also id.* at 284-85 (the district court's acknowledgement that Wheeler's side of the agreement—the $1.5 million pay down of debt—was not reflected in the records in evidence regarding the Wheeler Rental debt).[6]

---

[6] The court cited additional trial testimony in summarizing the "clear and convincing" and "overwhelming" evidence, Aplt. App., Vol. I at 272 & n.9, supporting its determination that the Bank had agreed to release Wheeler from his Guarantees of the Wheeler Rental debt, *see id.* at 264-66, 267-68, 269, 271, 272.

Although the district court stated that the Bank's records alone were "easily sufficient to establish that Dustin Wheeler was not the guarantor of the Wheeler Rental credits," *id.* at 273, it is clear from the court's extensive analysis that the testimony it cited was ultimately necessary to support its determination that the no asset exception applies in this case. Reliance on such evidence plainly runs counter to the purpose of § 1823(e) to enable the FDIC to quickly and accurately assess the value of a failed bank's assets.

We hold that the no asset exception to § 1823(e) does not apply to Wheeler's release defense because he does not assert that his Guarantees are void, nor does he claim that they are invalid due to a breach of bilateral obligations in the Guarantees themselves. Therefore, the agreement underlying his release defense must satisfy the requirements in § 1823(e). We hold it does not. Wheeler is therefore barred by *D'Oench* and § 1823(e) from asserting that defense against Cadlerock, as the FDIC's transferee.[7]

---

[7] We acknowledge the district court's apparent attempt to do equity in this case. But courts cannot graft an equitable exception upon the plain terms of § 1823(e). *See Langley*, 484 U.S. at 94. Moreover, "the equities the statute regards as predominant," *id.*, do not favor Wheeler, as the borrower. Rather, § 1823(e) protects the interests of those who are harmed by a borrower's failure to ensure that his agreement with a bank is approved and recorded in accordance with the requirements of the statute. *Id.*; *see also Noel*, 177 F.3d at 918 ("The design of the *D'Oench* doctrine . . . favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." (internal quotation marks omitted)).

## III.    Conclusion

The judgment of the district court is reversed.  This case is remanded to the district court for entry of judgment in favor of Cadlerock III, LLC, on its claim to enforce Dustin Wheeler's Guarantees of the Wheeler Rental debt.

Entered for the Court


Mary Beck Briscoe
Circuit Judge